ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA          :     **SEALED INDICTMENT**
                                  :
           - v. -                 :     S6 15 Cr. 536 (PGG)
                                  :
RIMA JAMEEL,                      :
   a/k/a "Rima Jameel Al Fahl,"   :
                                  :
           Defendant.             :
                                  :
- - - - - - - - - - - - - - - - - x

## COUNT ONE

**(Conspiracy To Commit Securities Fraud, Make False Statements In Annual And Quarterly SEC Reports And Make False Statements To Auditors)**

The Grand Jury charges:

### RELEVANT PERSONS AND ENTITIES

1.  At all times relevant to this Indictment, KIT digital, Inc. ("KITD") was a provider of end-to-end video asset management software and related services, with a focus on Internet Protocol-based interactive media, headquartered in Prague, Czech Republic and New York, New York.

2.  At all times relevant to this Indictment, RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, was an attorney based in the United Arab Emirates ("U.A.E.") who served as KITD's outside corporate counsel.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

3. At all times relevant to this Indictment, Kaleil Isaza Tuzman ("Tuzman") was the Chairman of the Board of Directors and Chief Executive Officer ("CEO") of KITD.

4. At all times relevant to this Indictment, Robin Smyth ("Smyth") was the Chief Financial Officer ("CFO") of KITD.

5. At all times relevant to this Indictment, KIT Capital ("KIT Capital") was an investment company founded by Tuzman and headquartered in Colombia.

6. From in or about May 2008 to on or about August 12, 2009, KITD's common stock was traded on the OTC Bulletin Board, which is an electronic quotation system for over-the-counter securities that are not listed on a national securities exchange. Beginning on or about August 13, 2009, KITD's common stock was traded on the NASDAQ. As a publicly traded company, KITD was required to file with the United States Securities and Exchange Commission (the "SEC") annual financial statements that had been audited by independent certified public accountants and quarterly financial reports.

7. At all times relevant to this Indictment, Tuzman and Smyth signed the quarterly and annual financial statements that KITD filed with the SEC.

8. On or about November 21, 2012, after an internal investigation led by KITD's audit committee, KITD announced to the investing public that KITD had discovered various errors and

2

irregularities in its historical financial statements and that it would have to issue restated financial statements. On the first trading day following this announcement, the price of KITD's common stock plummeted more than 64% from the previous day's closing price. In or about December 2012, KITD's stock was delisted from NASDAQ. KITD subsequently declared bankruptcy.

### THE SCHEME TO DEFRAUD

9. Between in or about 2008, when Tuzman became Chairman and CEO of KITD, and in or about the spring of 2012, when Tuzman resigned his positions at KITD, KITD touted itself to the investing public as a growing company that routinely met or exceeded the so-called "guidance" that Tuzman, Smyth and other KITD executives communicated to the investing public concerning KITD's operational and financial results for upcoming reporting periods. In truth and in fact, KITD consistently fell far short of this "guidance." As a result, from at least in or about 2010 through in or about 2012, Tuzman, Smyth and RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, with others, engaged in an illegal scheme to deceive KITD shareholders, members of the investing public, KITD's independent auditors and others concerning KITD's true operating performance and financial results.

10. Tuzman, Smyth and other KITD executives, with the

3

assistance of RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, employed two principal methods to further the scheme to defraud: (a) the improper recognition of revenue from so-called "perpetual license" contracts for KITD software (contracts that gave the purchasing customer the right to use the licensed software indefinitely), including contracts that were fabricated for the sole purpose of falsely inflating KITD's revenue; and (b) the execution of fraudulent "round-trip" transactions which had the effect of using KITD's own cash, rather than payments received from customers, to pay off bills, known as accounts receivable, that were due and owed to KITD, including those resulting from KITD's improper revenue recognition practices, rather than disclose to KITD's auditors and the investing public the fact that the bills were uncollectible or, in some cases, had resulted from fabricated contracts.

### KITD Fraudulently Inflated Reported Revenue

11. To effectuate the scheme to defraud, from at least in or about 2010 up to in or about 2012, Tuzman and Smyth, among others, employed two methods to fraudulently boost KITD's reported revenue: (a) recognizing the entirety of revenue from certain contracts at the time of sale despite the fact that KITD had not delivered a product to KITD's customers, in violation of KITD's stated accounting policies; and (b) recognizing revenue

4

from contracts that had been fabricated for the sole purpose of boosting KITD's revenue.

12. These fraudulent practices caused KITD to materially overstate its reported revenue, which had the effect of materially overstating KITD's net income and earnings on its annual and quarterly financial reports issued from the fiscal quarter ending June 30, 2010 through the fiscal quarter ending March 31, 2012.

Fraudulent Round-Trip Transactions To Pay Down Receivables

13. To further effectuate the scheme to defraud, and to hide their illegal revenue recognition scheme, RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, with others, created Jourdian Invest Ltd. ("Jourdian Invest"), a British Virgin Islands entity, for the purpose of using KITD money to make purported "loans" to KITD customers who were either unwilling or unable to pay the bills they purportedly owed to KITD. Using Jourdian Invest in this manner allowed Tuzman, Smyth and JAMEEL to fraudulently obscure their use of KITD's own money to pay down these customers' aging receivables on KITD's books.

14. To further effectuate the scheme to defraud, Tuzman, Smyth and RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, among others, likewise caused KITD to use company money, ostensibly escrowed in connection with KITD corporate acquisitions, to pay off fabricated or uncollectible receivables

5

by year-end. Specifically, Tuzman, Smyth and other KITD executives caused KITD to add an artificial "restructuring fee" to the purchase price of certain companies that KITD sought to acquire. Once the purchase price was inflated, Tuzman and Smyth, at times with JAMEEL's assistance, would establish an escrow account that was funded with KITD cash representing the so-called restructuring fee and was governed by a "side letter" between KITD and the acquired company. Tuzman and Smyth intentionally hid the side letter from KITD's independent auditors and the investing public.

15. Despite having represented that the restructuring fee was legitimately related to a KITD corporate acquisition, Tuzman, Smyth and RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, among others, instead used the escrowed money in round-trip transactions to pay down KITD's old, and in some cases, fraudulent receivables that, because of their age, might have attracted scrutiny from KITD's independent auditors and could have negatively impacted KITD's financial statements if they had remained unpaid or were discovered.

16. To further effectuate the scheme to defraud, RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, at Tuzman and Smyth's request, maintained a U.A.E.-based escrow account (the "U.A.E. Escrow Account") through a U.A.E.-based law firm (the "U.A.E. Law Firm") that, at various times, contained

6

millions of dollars of KITD funds. Instead of using the escrowed funds for legitimate corporate purposes, JAMEEL, at Tuzman and Smyth's request, caused the escrowed funds to be used to pay down fictitious or uncollectible KITD receivables. JAMEEL, working with Tuzman and Smyth, among others, sought to conceal the improper usage of the escrowed funds. For instance, on or about March 13, 2012, in connection with KITD's 2011 audit, JAMEEL e-mailed a balance confirmation to KITD's independent auditors in which she falsely claimed that the U.A.E. Escrow Account contained approximately $6.1 million when, in truth and in fact, and as JAMEEL well knew, the U.A.E. Escrow Account was empty.

### THE CONSPIRACY

17. From in or about June 2010 through in or about April 2012, in the Southern District of New York and elsewhere, RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, Tuzman, Smyth and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, namely (a) to commit fraud in connection with the purchase and sale of securities issued by KITD, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; (b) to make and cause to be made false and misleading statements of material fact in

7

applications, reports, and documents required to be filed with the SEC under the Securities Exchange Act of 1934 and the rules and regulations thereunder, in violation of Title 15, United States Code, Sections 78m(a) and 78ff; and (c) to make and cause to be made false and misleading statements and omissions to KITD's auditors, in violation of Title 15, United States Code, Sections 78m and 78ff, and Title 17, Code of Federal Regulations, Section 240.13b2-2.

### Objects Of The Conspiracy

### Fraud In Connection With The Purchase And Sale Of Securities

18. It was a part and an object of the conspiracy that RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, Tuzman, Smyth and others known and unknown, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities issued by KITD, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making and causing KITD to make untrue statements of material fact and omitting to state material facts necessary in order to make the statements made,

in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### False Statements In
### Annual And Quarterly SEC Reports

19. It was further a part and an object of the conspiracy that RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, Tuzman, Smyth and others known and unknown, willfully and knowingly, in applications, reports, and documents required to be filed with the SEC under the Securities Exchange Act of 1934 and the rules and regulations thereunder, would and did make and cause KITD to make statements that were false and misleading with respect to material facts, in violation of Title 15, United States Code, Sections 78m(a) and 78ff.

### False Statements To Auditors

20. It was further a part and an object of the conspiracy that Tuzman and Smyth, being officers of KITD, an issuer with a class of securities registered pursuant to Section 12 of the Securities Exchange Act of 1934, RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, and others known and unknown, willfully and knowingly, would and did, directly and indirectly, (a) make and cause to be made materially false and misleading statements;

and (b) omit to state, and cause other persons to omit to state, material facts necessary in order to make the statements made, in the light of the circumstances under which such statements were made, not misleading to accountants in connection with (i) audits and examinations of the financial statements of KITD, required to be filed with the SEC pursuant to rules and regulations enacted by the SEC; and (ii) the preparation and filing of documents and reports, required to be filed with the SEC pursuant to rules and regulations enacted by the SEC, in violation of Title 17, Code of Federal Regulations, Section 240.13b2-2 and Title 15, United States Code, Section 78ff.

### Overt Acts

21. In furtherance of the conspiracy and to effect its illegal objects, RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, and her co-conspirators, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. On or about December 10, 2010, JAMEEL and Smyth executed an escrow agreement establishing the U.A.E. Escrow Account and agreeing to place $7.5 million of KITD funds in the U.A.E. Escrow Account.

    b. On or about March 13, 2012, JAMEEL e-mailed a balance confirmation to KITD's independent auditors in which she

falsely claimed that the U.A.E. Escrow Account contained approximately $6.1 million.

      c. On or about March 30, 2012, Tuzman and Smyth signed KITD's Form 10-K for the fiscal year ending December 31, 2011, which was transmitted electronically to the SEC from New York, New York.

      d. On or about April 13, 2012, Tuzman caused KIT Capital to wire $3 million to the U.A.E. Law Firm to replenish the U.A.E. Escrow Account.

      e. On or about April 19, 2012, JAMEEL caused the U.A.E. Law Firm to wire $2,999,918 to KITD as a purported release of escrowed funds from the U.A.E. Escrow Account.

      f. On or about April 20, 2012, Tuzman caused KIT Capital to wire $5 million to the U.A.E. Law Firm to further replenish the U.A.E. Escrow Account.

      g. On or about April 26, 2012, JAMEEL caused the U.A.E. Law Firm to wire $4,999,949 million to KITD as a purported release of escrowed funds from the U.A.E. Escrow Account.

      (Title 18, United States Code, Section 371.)

## COUNT TWO

### (Securities Fraud)

The Grand Jury further charges:

22. The allegations contained in paragraphs 1 through 16 and paragraph 21 of this Indictment are repeated and realleged as if fully set forth herein.

23. From in or about June 2010 up to and including April 2012, in the Southern District of New York and elsewhere, RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed, in connection with the purchase and sale of securities issued by KITD, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making and causing KITD to make untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon any person.

(Title 15, United States Code, Sections 78j(b) and 78ff;

Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT THREE

### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

24. The allegations contained in paragraphs 1 through 16 and paragraph 21 of this Indictment are repeated and realleged as if fully set forth herein.

25. From in or about December 2010 through in or about April 2012, in the Southern District of New York and elsewhere, RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, and others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(2).

26. It was a part and an object of the conspiracy that RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, and others known and unknown, willfully and knowingly would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, to wit, the specified unlawful activities charged in Counts One and Two

13

of this Indictment, all in violation of Title 18, United States Code, Section 1956(a)(2).

(Title 18, United States Code, Section 1956(h).)

### COUNT FOUR

### (Money Laundering)

The Grand Jury further charges:

27. The allegations contained in paragraphs 1 through 16 and paragraph 21 of this Indictment are repeated and realleged as if fully set forth herein.

28. In or about April 2012, in the Southern District of New York and elsewhere, RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, knowingly transported, transmitted, and transferred, and attempted to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, to wit, JAMEEL caused to be transmitted, by means of a wire transfer, funds in the amount of $7,999,867 from an account in the U.A.E. to an account in New York, New York, with the intent to promote the carrying on of the specified unlawful activities charged in Counts One and Two of this Indictment.

(Title 18, United States Code, Sections 1956(a)(2) and 2.)

## FORFEITURE ALLEGATION

29. As a result of committing one or more of the foregoing securities fraud offenses alleged in Counts One and Two of this Indictment, RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses.

### Substitute Asset Provision

30. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the

forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 28, United States Code, Section 2461.)

### FORFEITURE ALLEGATION

31. As a result of committing one or more of the foregoing money laundering offenses alleged in Counts Three and Four of this Indictment, RIMA JAMEEL, a/k/a "Rima Jameel Al Fahl," the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in such offenses, and all property traceable to such property.

### Substitute Asset Provision

32. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 982; Title 21, United States Code, Section 853.)

_____
FOREPERSON

*Preet Bharara*
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

v.

**RIMA JAMEEL,**
a/k/a "Rima Jameel Al Fahl,"

Defendant.

---

**SEALED INDICTMENT**

S6 15 Cr. 536 (PGG)

(18 U.S.C. §§ 2, 371, 1956(a)(2), &
1956(h); 15 U.S.C. §§ 78j(b), 78ff;
17 CFR §§ 240.10b-5.)

PREET BHARARA
United States Attorney

_____   _____
   Deputy              Foreperson

---