# CREIZMAN LLC

565 Fifth Avenue
7th Floor
New York, New York 10017
tel: (212) 972-0200
fax: (646) 200-5022
ecreiz@creizmanllc.com
www.creizmanllc.com

*Via ECF*
November 14, 2016

The Honorable Paul G. Gardephe
United Stated District Judge
United States District Court for the
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *United States v. Tuzman*, 15 Cr. 536 (PGG)

Dear Judge Gardephe:

  I represent Omar Amanat in the above-referenced case. Per Your Honor's instructions at the previous status conference held on September 22, 2016, I am writing to update the Court concerning discovery and potential motions.

  I entered an appearance in this case in late July 2016. Since then, we have been reviewing the government's initial discovery production, which consisted of a DVD and a hard drive. Although we have made substantial progress in our review of the materials on the DVD, the hard drive, which contains voluminous discovery in the millions of pages of documents, was difficult to access and required the assistance of e-discovery specialists to upload the files to a platform on which we can review the materials. Accordingly, we are continuing to review the contents of the hard drive, but we were delayed in actually getting our review up and running.

  On November 8, 2016, counsel for the government informed us that it would be producing additional discovery relating to Stephen Maiden and required a hard drive capable of containing 750 GB of data, which suggests, like the first hard drive, the discovery will be voluminous and will require e-discovery review platforms. In addition, counsel for the government informed us that it would also be producing 500 GB of data consisting of the SEC production in the *Tuzman* case, which is the material we requested at the September 22, 2016 status conference. We expect to receive the new discovery materials early this week, if not today.

NEW   YORK      WHITE   PLAINS

Hon. Paul G. Gardephe
November 14, 2016
Page | 2

Given the status of the government's document production, and the mountains of records that must still be reviewed, as well as the fact that the trial date is scheduled for October 2, 2017, we suggest that the Court now set a schedule only for motions directed to the face of the Superseding Indictment S-7 (the "Indictment").  We expect to submit the following motions on behalf of Mr. Amanat:

•   **Bill of Particulars**:  This is a complex securities fraud case in which the defendants, Omar Amanat and Kaleil Isaza Tuzman, and Stephen Maiden, are alleged to have conspired together to defraud investors in Maiden's hedge fund, but are also alleged to have deceived and defrauded each other.  The discovery produced in this case also shows that at various times, Amanat, Tuzman, and Maiden, accused each other of fraud and deceit in connection with raising funds.

The discovery also reveals that at different times, Amanat, Tuzman, and Maiden disputed questions such as the solvency or liquidity of Enable at a particular point in time, whether there was indeed "trading losses" at Enable, and whether Maiden's investors actually suffered losses due to Enable investments or due to other, larger investments of Maiden's choosing that failed. The discovery also reveals an even more complex picture than even portrayed by the Indictment, in which Amanat, Tuzman, and Maiden have various agreements among each other, prepared by law firms, that are not addressed in the Indictment and which flatly refute some of the Indictment's allegations, and make others implausible or inexplicable.

For these reasons, which will be more fully set forth in our pretrial motions, we expect to move for a bill of particulars requiring:

> **(i)** identification of the unindicted co-conspirators in Counts One and Four;
>
> **(ii)** specification of the victims of the alleged fraudulent scheme other than the investors in Maiden's hedge fund, if any;
>
> **(iii)** specification of the "false and misleading representations" Mr. Amanat allegedly made to solicit certain investments, and to whom such misrepresentations were made (Indictment ¶12);
>
> **(iv)** a statement as to whether Mr. Amanat's alleged misrepresentations to Mr. Maiden, as alleged in Paragraphs 16-18 of the Indictment constituted an "object" of the alleged conspiracy charged in Count One;
>
> **(v)** specification of the "material misrepresentations" and the "material facts" omitted" concerning the investments by Maiden Capital's investors as alleged in Paragraph 30;
>
> **(vi)** identification of the trades that resulted in the Enable "losses," as alleged in Paragraphs 14-16;
>
> **(vii)** specification of what the term "Enable losses" means in the Indictment, given that

>the allegation is that the "Enable losses" were due to trading securities were hidden from Maiden Capital investors (*see, e.g.,* ¶¶17, 19), yet in order to cover Maiden's redemption requests and hide the so-called Enable "losses," Mr. Amanat allegedly funded Maiden Capital to pay redemption requests by withdrawing money from accounts belonging to Enable. (*See, e.g.,* ¶¶23, 26). In other words, if Enable suffered "losses" that Amanat and Maiden sought to conceal from Maiden Capital's investors, it appears that Enable had the funds to replenish any such losses, and thus there was no need for concealing any "losses." Or maybe there were no "losses" in the first place that had any effect on Maiden Capital investors.
>
>**(viii)** a statement as to whether the December 2008 Agreement to allegedly manipulate KIT Digital's stock price—which the Indictment concedes was "fulfilled" shortly thereafter (¶¶40, 41)—constitutes a separate conspiracy from the later alleged agreement to manipulate KIT Digital's stock price, concerning which the Indictment fails to identify Mr. Amanat in any alleged overt act and the discovery provides no evidence of his involvement in that agreement.

- **Severance:** We intend to move for a severance of Mr. Amanat's trial from Mr. Tuzman's trial, and, in the alternative, a severance of the trials of Counts One through Four from the remaining Counts of the Indictment, which involve an alleged scheme to defraud shareholders of Kit Digital, in which Mr. Amanat is not alleged to have participated. Furthermore, just as Mr. Amanat is not charged in Counts Five and Six in the Indictment, Mr. Tuzman is not charged in Counts One through Three of the Superseding Indictment.

    The severance motion will be based on Rule 8 misjoinder, especially because the only common Count in which Mr. Amanat and Mr. Tuzman are charged, Count Four, consists of two separate market manipulation conspiracies: one in which Messrs. Amanat, Tuzman, and Maiden allegedly completed no later than March 2009, which is therefore time-barred; and one in which only Messrs. Tuzman and Maiden allegedly participated without Mr. Amanat. The government should not be permitted to accomplish a joint trial through the contrivance of charging two conspiracies in one count. Furthermore, Counts Five and Six are misjoined with Counts One through Four under Rule 8.

    In addition, Rule 14 severance is warranted in light of irreconcilable and mutually antagonistic defenses. Indeed, the discovery demonstrates that the issue as to whether Enable suffered trading losses and whether it was insolvent—a fact on which the allegations against Mr. Amanat depend—was the matter of vigorous dispute between Mr. Amanat and Mr. Tuzman for several years. In addition, a joint trial of all Counts, including the Counts in which Mr. Amanat is not charged, will result in "spillover" prejudice to Mr. Amanat. Furthermore, the government has not produced statements made by Mr. Tuzman, if any, to law enforcement, which may require severance based on *Bruton v. United States*, 391 U.S. 123 (1968).

- **Dismissal of Counts One and Four for duplicity:** Counts One and Four should be dismissed because they are duplicitous. Count One purports to charge a conspiracy involving Amanat, Maiden, and unidentified "others" to defraud Maiden Capital's investors. However, the

Hon. Paul G. Gardephe
November 14, 2016
Page | 4

allegations concerning the alleged scheme are replete with vague and amorphous (and perhaps gratuitous) references to separate, uncharged frauds allegedly committed by Mr. Amanat against Maiden and unidentified other individuals.  For example, Paragraph 12 alleges that Mr. Amanat "devised and carried out a scheme to hide the fact that investments by Maiden Capital clients in Enable, including investments Amanat *had solicited with false and misleading representations*, had been lost."  Similarly, Paragraph 17 alleges that in November 2008, Mr. Amanat solicited funds from Mr. Maiden, "*purportedly* for the purpose of investing in Enable," when, "[i]n reality, Amanat instead intended to *misappropriate* Maiden's investment to pay redemptions to Enable investors, thereby concealing the Enable losses."  It is unclear whether one or more frauds are actually being charged as part of the amorphous conspiracy charged in Count One.

Count Four purports to charge a conspiracy from December 2008 through September 2011 among Messrs. Amanat, Tuzman, Maiden, and "others" to manipulate the stock price of Kit Digital shares.  Paragraph 39 of the Indictment describes a written agreement entered into by Messrs. Amanat, Tuzman, and Maiden, in which Maiden agreed to purchase at least $400,000 of common stock of Kit Digital in the open market over the next 30 days and then hold it for at least 90 days.  Paragraph 40 concedes that Mr. Maiden "fulfilled his commitment" "[s]hortly after entering into the agreement."

The Indictment goes on to allege that even though "Maiden had fulfilled his obligations under the [December 2008] Agreement," both Tuzman and Amanat "induced Maiden to continue to manipulate" KIT Digital's stock price, and that between March 2009 and September 2011, "with the knowledge and approval" of Tuzman and Amanat (¶¶41, 42) (which knowledge and approval would be insufficient, by itself, to constitute participation in a conspiracy), Maiden "continued to manipulate" KIT Digital's stock price. (¶42).  Nevertheless, Paragraphs 43 through 54, which describe this latter agreement to manipulate KIT Digital's stock price, discuss acts by Mr. Maiden and Mr. Tuzman, and communications between them, and do not involve Mr. Amanat whatsoever.  Furthermore, Mr. Amanat is not mentioned in any overt act relating to this second market manipulation agreement.  (¶¶57(b),(c)).

Accordingly, Count Four is duplicitous and should be dismissed.

- **Dismissal of Count Four against Mr. Amanat on statute of limitations grounds.**

As discussed above, Count Four really alleges two separate conspiracies to manipulate KIT Digital's stock price, only one of which allegedly involved Mr. Amanat, and that scheme was completed over seven years before he was indicted in this case.  Accordingly, Count Four should be dismissed as against Mr. Amanat because it is time-barred.

- **Motion to strike prejudicial surplusage**

As discussed above, the Indictment contains allegations suggesting that Mr. Amanat participated in frauds in which he is not charged.  In these circumstances, the Court should exercise its discretion to strike such prejudicial surplusage both because those allegations are unfairly inflammatory and are irrelevant to the crimes actually charged.  *See, e.g., United States*

*v. Hubbard*, 474 F. Supp. 64, 82 (D.D.C. 1989) (Striking terms that "may encourage the jury to draw inferences that the defendants are believed to be involved in (illegal) activities not charged in the indictment."); *United States v. Napolitano*, 552 F. Supp. 465, 480 (S.D.N.Y. 1982) ("The determinative question [on a motion to strike surplusage] is . . . the relevance of the allegation to the crime charged in the indictment.").

      These motions are complex and will involve substantial research to brief adequately for the Court. I have a criminal securities fraud trial scheduled before Judge Rakoff in *United States v. Lumiere*, 16-CR-483 (JSR), that is scheduled to begin on January 9, 2016 and last at least two weeks. Although Assistant United States Attorney Damian Williams is also scheduled to participate in the *Lumiere* trial, he has another Assistant United States Attorney as co-counsel who can focus on the motions in this case while he prepares for the *Lumiere* trial. In addition, Mr. Williams has two Assistant United States Attorneys as co-counsel in the *Lumiere* trial whose work on that case will allow him to participate in the preparation of briefing on pretrial motions in this case. I do not have similar resources to handle as easily as the government both trial preparation in the *Lumiere* case as well as the substantial pretrial motion papers that we expect to brief in this case. Accordingly, I respectfully request that the deadline for this phase of Defendants' pretrial motions in this case be scheduled for February or late January, at the earliest.

      I thank the Court for its consideration in this matter.

Respectfully submitted,

/s/ Eric M. Creizman
Eric M. Creizman

cc:    Andrea Griswold and Damian Williams (by ECF)
       Michael Beys, Josh Liston, Reed Brodsky, and Avi Weitzman, Esq. (by ECF)