# CREIZMAN LLC

565 Fifth Avenue
7th Floor
New York, New York 10017
tel: (212) 972-0200
fax: (646) 200-5022
ecreiz@creizmanllc.com
www.creizmanllc.com

*Via ECF and*
*Courtesy Copy by Facsimile*

November 18, 2016

The Honorable Paul G. Gardephe
United Stated District Judge
United States District Court for the
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   ***United States v. Tuzman*, 15 Cr. 536 (PGG)**

Dear Judge Gardephe:

      On behalf of Omar Amanat, I am writing to respectfully request that the Court order a modification of Mr. Amanat's bail conditions to remove the restriction of home detention with electronic monitoring.  On July 13, 2016, Magistrate Judge Maas set a personal recognizance bond of $2.5 million, secured by $250,000 in cash, and co-signed by five family members.  Mr. Amanat has now increased the security supporting his bond by ex-wife pledging her home with equity of $400,000, where she and Mr. Amanat's three young children live, including his five-year-old son who is still undergoing intensive rehabilitation from a traumatic brain injury that required emergency neurosurgery.

      The government and Pretrial Services undoubtedly will oppose this application because, yesterday, for instance, they declined to consent to Mr. Amanat's contemplated application to modify his bail conditions to enable him to visit his five-year-old son in Manhattan, where he is now undergoing rehabilitation at the Rusk Institute at NYU Hospital.  Instead, they would only consent to his visits on a case-by-case basis.  Pretrial Services has also declined to permit Mr. Amanat to attend religious services at a place of worship, Dergah Al-Farah, a Sufi-Buddhist because it is located in Manhattan, although Mr. Amanat has explained to Pretrial Services that there are no other Sufi-Buddhist places of worship near his home.  These pretrial restrictions of home detention and electronic monitoring on Mr. Amanat are punitive and unwarranted.  Rather than burden the Court with motion after motion to temporarily modify his release conditions, we are simply asking for removal of the conditions of house arrest and electronic monitoring.

NEW   YORK       WHITE   PLAINS

Hon. Paul G. Gardephe
November 18, 2016
Page | 2

Trial in this case is scheduled for October 2, 2017, almost eleven months from now. Before even having his day in court, Mr. Amanat has been unnecessarily subjected to strict home detention with electronic monitoring for the past four months, which has wreaked havoc on his family and his life. Mr. Amanat is entitled to the least restrictive conditions of bail to ensure his appearance, and these conditions are significantly more restrictive than necessary to achieve the objectives of the Bail Reform Act. *See United States v. Polouizzi*, 697 F.Supp. 2d 381, 389 (E.D.N.Y. 2010) (Weinstein, J.) ("Required wearing of an electronic bracelet, every minute of the day, with the government capable of tracking a person not yet convicted as if he were a feral animal would be considered a serious limitation on freedom by most liberty-loving Americans.").

The overly restrictive conditions of electronic monitoring and home detention have strained his familial relationships and has dislocated the lives of his family members. For example, Mr. Amanat has not been able to spend meaningful quality time with any of his six children, such as spending time with them in the park, coaching their basketball teams, as he usually does, attending parent-teacher conferences, or taking them to the movies, our out to lunch or dinner—the simple activities of family life that permit parents and children to create lasting memories and form meaningful bonds. Furthermore, as we also noted in a previous submission to the Court, with a letter from Mr. Amanat's cardiologist, that his inability to exercise poses significant health risks to him. There is no good reason to continue these conditions for the next year.

Simply stated, Mr. Amanat is not a flight risk. Mr. Amanat has no ties to any country other than the United States. He was born here, in Manhattan, at Lenox Hill Hospital, where his father was a resident, and was raised in Queens and New Jersey, where he attended public elementary, junior high, and high schools, before attending the University of Pennsylvania. He is listed in his high school's hall of fame for his athletic accomplishments. And virtually all of Mr. Amanat's family, including his mother, a public high school teacher for over 40 years, live near each other in the neighboring towns of Montville and Short Hills, New Jersey, and have lived there for almost 50 years: his parents; his sister, his brother, his sister-in-law, and their children; as well as three generations of grandparents, uncles, aunts, and cousins. The concentration of Mr. Amanat's large extended family has led to friends and family jokingly referring to Montville as "Amanatville." In addition, as the Court already is aware, Mr. Amanat's six children live with his former spouses in the New York metropolitan area, and he is actively involved in their lives. Mr. Amanat's only home is this country and this area. He has lived in this country all of his life and all of his roots are in this country. He has nowhere else to go.

Nor would he leave his family behind, especially since Mr. Amanat's father is enduring Stage IV cancer, his mother suffers from advanced heart disease, and his five-year-old son is slowly recovering from a traumatic brain injury. It is inconceivable, given these circumstances, that Mr. Amanat would leave his six children, his elderly, ailing parents, and his entire support network of family and friends, to a country he has never lived in and has no roots (where there are no extradition treaties) and not only subject his five co-signers to financial ruin and cause his

Hon. Paul G. Gardephe
November 18, 2016
Page | 3

ex-wife and three children to lose their home, but also embroil his entire family in an investigation for the serious crime of bail jumping.

The security for Mr. Amanat's bail has now been increased to a home with equity value of $400,000—and not just any home, but the home where his three young children live. And notwithstanding the purported infractions Pretrial Services has reported to the Court—such as waiting inside a pizza parlor to be picked up by his wife, who was delayed in traffic, instead of remaining outside a few feet away at the bus stop while it was cold and raining—Mr. Amanat is still here, still honoring the conditions under which he is currently subjected, and is determined to litigate this matter to its conclusion. The violations cited by Pretrial are at worst, due to nothing more than mistakes in judgment: when his wife finally picked him up from the pizza place after waiting over an hour, he went home, where he was supposed to go, and before the time he said he would be home from my office. And this happened once in four months and has not happened since.

Indeed, Mr. Amanat's respect for the conditions of bail set by Magistrate Judge Peck was amply demonstrated when, on a Friday night, he called my home desperately seeking advice as to whether he could take his five-year-old son to the emergency room for what turned out to be a traumatic brain injury, but then waited for his ex-wife, who canceled her plans and returned to pick his son up up. By that time, Mr. Amanat's son had stopped his urgent shrieks so his ex-wife took him home, no longer sensing any danger. However, within 48 hours, Mr. Amanat's son lost consciousness and was taken to the emergency room where it was discovered that he had suffered a subdural hematoma and required emergency neurosurgery. Mr. Amanat waited for approval to meet them at the emergency room because he could not reach anyone at Pretrial Services and would not leave because he did not have approval to leave. Even after speaking with me, he would not leave until I got consent from either the government or Pretrial Services. Fortunately, Assistant United States Attorney Griswold received my voice message and promptly returned my call. Since that horrifying episode, Mr. Amanat has waited for approval, sometimes for days, to see his son, who now must wear a helmet most of the day, is unable to use his left arm, and is at risk of seizures.

Mr. Amanat plainly has demonstrated his commitment to complying with any conditions imposed upon him. And he is also deeply committed to defending himself against the charges in this case. We respectfully submit that those conditions should be relaxed so that Mr. Amanat—who has never before been charged with a crime—can have some semblance of quality of life, at least before the government attempts to prove its case to a jury beyond a reasonable doubt, and Mr. Amanat puts on his defense.

In these circumstances, and especially given the additional security supporting his bond, house arrest and GPS monitoring do not appear to be the "least restrictive condition, or combination of conditions of pre-trial release" necessary to assure his appearance under the Bail Reform Act, 18 U.S.C. §3142(c)(1)(B).

Hon. Paul G. Gardephe
November 18, 2016
Page | 4

 

Accordingly, we respectfully request that the conditions of home detention with electronic monitoring be removed.

Respectfully Submitted,

/s/ Eric M. Creizman
Eric M. Creizman

cc:    Joshua Rothman, Vincent Imbrosciano, U.S. Pretrial Services Officers (by email)
        AUSAs Andrea Griswold and Damian Williams (by ECF and email)