

*Via ECF*

March 27, 2017

Hon. Paul G. Gardephe
United States District Court for the
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

        Re:    *United States v. Tuzman*, 15 Cr. 536 (PGG)

Dear Judge Gardephe:

We write respectfully in response to the Government's letter dated March 24, 2017 (Dkt. 259, "Ltr."), regarding a March 1, 2017 Memorandum and Order in *United States v. Walters*, 16 Cr. 338 (PKC) (unpublished and unavailable on Westlaw/Lexis) (the "Walters Order"). In its letter the Government writes: "Although counsel relies extensively on *Walters*, they fail to note anywhere in their brief that Judge Castel ultimately denied the motion in that case without an evidentiary hearing more than two weeks before Tuzman submitted his reply." Ltr. (emphasis added). This statement is misleading for several reasons.

First, the Government states that Judge Castel denied "the motion," but fails to explain that the motion that was ultimately denied in *Walters* was a motion to dismiss the indictment. In fact, the court in *Walters granted* the motion for an evidentiary hearing, which was later mooted given that the Government conceded the very misconduct alleged by Walters.

Second, it is misleading because it suggests that Mr. Isaza Tuzman improperly cited *Walters* in his motion papers. Mr. Isaza Tuzman relied on *Walters* for the proposition that this Court should be hesitant to accept – blindly – the representations made by the Government because these representations are at times wrong. *See* Dkt. 253 at 3, 14, 17-18, 29-30. Indeed, in *Walters*, the Government had represented to Judge Castel on October 21, 2016 that it had *not* leaked any grand jury information to the press. *See United States v. Walters*, Dkt. 43. On November 17, 2016, and over the Government's objections, Judge Castel issued an order scheduling an evidentiary hearing regarding the Government's conduct. *Id.*, Dkt. 46. Then soon thereafter, on December 16, 2016, the Government reversed course and conceded that, in fact, the FBI had been the source of the leaks. *Id.*, Dkt. 53. This obviated the need for an evidentiary hearing on the alleged misconduct.

As the record in *Walters* makes clear, it was this Court's issuance of an order scheduling a hearing that prompted the Government to closely investigate its conduct regarding the leaks. *See* Walters Order at 10 (Judge Castel stating that the Government came to realize the misconduct during its "preparation for the evidentiary hearing"). The Order prompted the Government to produce documents regarding its role with the leaks. Thus, it was only *after* Judge Castel scheduled a hearing that the Government exchanged evidence with the defense and produced emails from the AUSA in charge of the prosecution, the FBI agents, and others, regarding the events surrounding the leaks. *Id.*, Dkt. 65-2 to 65-7. As Judge Castel explained, had the Court refrained from scheduling of a hearing on the Government misconduct, "the misconduct at issue may never have come to light." *Id.* at 19.

Finally, the Government's decision to raise the recent Walters Order in a post-briefing letter is puzzling, because the Government cited *Walters* in its Opposition Brief, but failed to cite the Walters Order, even though it was decided six days before it filed its brief. Indeed, the Government cited *Walters* in its opposition brief for the same proposition that Mr. Izaza Tuzman had cited it in its moving brief : "*United States v. Walters*, Dkt. Nos. 45 at 21-22, 46, No. 16 Cr. 338 (PKC) (S.D.N.Y. Nov. 17, 2016) (evidentiary hearing granted where defendant alleged, among other things, an attempt by the Government to use grand jury leaks to prompt conversation and actions that could be [sic] later be used to the Government's advantage)". Dkt. 249 (Opp. Br.) at 30 n.14; *see also* Dkt. 237 (Moving Br.) at 23. Perhaps the Government failed to include the Walters Order in its Opposition Brief because it only buttresses Mr. Isaza Tuzman's motion for discovery and a hearing. The Walters Order speaks volumes about why courts must diligently exercise their supervisory powers and police potential misconduct. *See* Walters Order at 20 (noting that even though the "artful opposition to Walters' initial motion contained no affirmative statements that were false", the Government "confined itself to denials from limited sources", and "never disclosed high level concerns over FBI leaks"). Is the Government claiming that there is no value in exposing internal misstatements or false representations within the Government? In fact, as noted by the court in *Walters*, there is a strong deterrence value in exposing government misconduct. (*Id.* at 19 ("Thankfully, the outing of the leaker may serve to deter other faithless federal agents.").) And even where in *Walters* – unlike in this case – the absence of prejudice "doom[ed]" his motion to dismiss the indictment, the Court noted that the misconduct was "worthy of the full measure of the Department of Justice's investigative and, if appropriate, prosecutorial resources." (*Id.* at 20.)

Respectfully,

*/s/ Silvia Serpe*
Silvia L. Serpe

cc:     Counsel of Record Via ECF

2