```
                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK

In re:                            :
                                        Docket #15cr536
 UNITED STATES OF AMERICA,        :

                    Plaintiff,    :

   - against -                    :

 OMAR AMANAT,                     : New York, New York
                                    July 13, 2016
                    Defendant.    :

------------------------------------ :

                    PROCEEDINGS BEFORE
                 THE HONORABLE FRANK MAAS,
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          U.S. ATTORNEY'S OFFICE
                        BY:  ANDREA GRISWOLD, ESQ.
                        One Saint Andrew's Plaza
                        New York, New York 10007


For Defendant:          KOSTELANETZ & FINK, LLP
                        BY:  CHRISTOPHER FERGUSON, ESQ.
                        Seven World Trade Center, 34th Floor
                        New York, New York 10007




Transcription Service: Carole Ludwig, Transcription Services
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                                                        3

 2              THE COURT:   Judge Gardephe referred for

 3    arraignment as well?

 4              MS. ANDREA GRISWOLD:   Yes, Your Honor.

 5              THE COURT:   When is - has he set a conference

 6    date?

 7              MS. GRISWOLD:   He has, July 20 at 3:30 p.m.

 8              THE COURT:   Mr. Amanat, this afternoon I'm going

 9    to advise you of your rights, inform you of the charges

10    against you, I'll decide whether you need to have counsel

11    appointed to represent you, and whether there are

12    conditions under which you can be released.

13              You have the right to remain silent and are not

14    required to make any statements.  Even if you have made

15    statements to the authorities, you need not make any

16    further statements, and anything that you do say can be

17    used against you.  You also have the right to be released

18    either with or without conditions pending a trial of this

19    case, unless I find that there are no conditions that would

20    reasonably assure both your presence in court and the

21    safety of the community.

22              Last, you have the right to be represented by

23    counsel during all court proceedings, including this one,

24    and during any questioning by the authorities.  I note that

25    you have retained counsel, but should you at any point be
```

```
 1                                                    4
 2  unable to afford counsel, you could ask that counsel be
 3  appointed to represent you.
 4           You've been charged in four counts in a
 5  superseding indictment in this case.  Count one alleges
 6  that you were part of a wire fraud conspiracy in violation
 7  of Title 18 U.S.C. § 1349.  Count two alleges that you
 8  actually committed the crime of wire fraud or aided and
 9  abetted others in the commission of that crime in violation
10  of Title 18 U.S.C. §§ 1343 and 2.  Count three alleges that
11  you aided and abetted investment advisor fraud in violation
12  of Title 15 U.S.C. §§ 80(b)(6) and 80(b)(17) and Section 2
13  of Title 18 of the United States Code.  And last, you're
14  charged with conspiring to commit securities fraud in
15  violation of Title 18 U.S.C. § 371.  Each of those crimes
16  with it a number of potential sanctions including jail
17  time.
18           I take it, counsel, you've seen the indictment and
19  had an opportunity to review it with your client?
20           MR. CHRISTOPHER FERGUSON:   Yes, Your Honor.
21           THE COURT:   And do you waive its public reading?
22           MR. FERGUSON:   Yes, we do, Your Honor.
23           THE COURT:   Is your client ready to enter his
24  plea with respect to these charges?
25           MR. FERGUSON:   He is, Your Honor.
```

```
                                                            5
1
2              THE COURT:   What is your plea, sir, guilty or not
3    guilty?
4              MR. OMAR AMANAT:   Not guilty.
5              THE COURT:   What's the Government's position on
6    bail?
7              MS. GRISWOLD:   Your Honor, we believe that there
8    are conditions that can be set for the defendant's release,
9    but we are not in agreement as to what those conditions
10   are, and I think we need to have an argument about that.
11             THE COURT:   Okay.  Tell me what the Government's
12   position is.
13             MS. GRISWOLD:   Okay, Your Honor, I'm going to
14   walk through a few points, but why don't I outline first
15   what the package that we're seeking.
16             THE COURT:   Okay.
17             MS. GRISWOLD:   We're seeking a $2 million
18   personal recognizance bond secured by $500,000 in cash or
19   property, three cosigners, electronic monitoring, strict
20   travel restrictions to the Southern and Eastern Districts
21   of New York and the District of New Jersey where the
22   defendant would reside at his home, surrender of travel
23   documents, and all conditions to be met before the
24   defendant's release.
25             I would note that the Pretrial is also seeking a
```

6

1

2 secured bond.  The language at the end of the Pretrial

3 report is a little confusing in terms of whether or not the

4 bond should be secured, but I checked with Pretrial before,

5 and they are seeking a secured bond as well.

6          Let me walk through the three points that we think

7 are key here.  The first is that Mr. Amanat has the

8 incentive to flee.  The second is that he has the means and

9 connections to relocate and live in a foreign jurisdiction,

10 potentially one that does not extradite to the United

11 States.

12          And, finally, I want to focus on why we believe

13 the bond was be secured and the conditions met before Mr.

14 Amanat is released.  Amanat's personal signature, in our

15 view, is of little value here.  As I'll detail, he has a

16 history of not paying judgments and of ignoring orders of

17 the court.  In fact, we have witnesses who will testify

18 that he has boasted that he is judgment proof and that he

19 has money all over the world.

20          So let me turn first to flight risk and the

21 incentive that we believe he has to flee.  The proof in

22 this case we believe is extremely strong, and the chance of

23 conviction is quite high.  As outlined in the indictment,

24 this case relates to KIT Digital in the case against its

25 CEO and chairman, Mr. Kaleil Isaza Tuzman who's currently

1
2  awaiting extradition from Colombia and facing the same
3  market manipulation charges that the defendant here faces.

4       The market manipulation conspiracy in this case
5  began with a written agreement between this defendant, Mr.
6  Tuzman, and a third individual, Mr. Stephen Maiden who ran
7  a hedge fund in North Carolina and has since pled guilty to
8  those market manipulation charges and is cooperating with
9  the Government.  In addition to the written agreement and
10 Mr. Maiden's cooperation and the actual trading records
11 showing manipulation, the email and text message evidence
12 in this case is direct, it's on point, and it is quite
13 persuasive.  For example, there are emails in which this
14 defendant expressly takes credit for Maiden's purchases of
15 KIT stock pursuant to that agreement, and in addition to
16 that evidence, as I said, Mr. Maiden is cooperating.

17      And the proof regarding the fraud on Maiden
18 capital investors is equally strong.  The core of this
19 conduct all relates back to Enable which is a Dubai, United
20 Arab Emirates based investment firm that was managed by an
21 associate of Mr. Amanat, and Mr. Amanat solicited money for
22 that fund, including from Maiden and from KIT digital,
23 millions of dollars.  The Enable money was lost, and when
24 it was lost, rather than disclose those losses, we allege
25 that Mr. Amanat turned to Maiden for another $2 million

8

1

2  saying it would go into Enable for a short-term loan, but,

3  in fact, it was then used to repay redemptions from other

4  investors who had lost money in Enable.  And, again, the

5  wire transfer evidence, the text message and emails and Mr.

6  Maiden's testimony make the case on these counts very

7  strong.

8          So the penalties is the other thing I want to talk

9  about in terms of incentive to flee.  There's a 50-year

10 statutory max here on the conduct involving defrauding

11 Maiden Capital Investors.  Maiden is already serving an 84-

12 month sentence imposed by a judge in North Carolina, and

13 that sentence does not count for the market manipulation

14 conduct.  We haven't done a full calculation of the numbers

15 on that count yet, but what we do know is that there was

16 more than 2 million in KIT Digital common stock shares that

17 were manipulated over a more than two-year period.  And

18 that there were more than 54 million shares of KIT Digital

19 outstanding at the time.  So we are likely talking about a

20 guidelines range here that easily exceeds ten years in this

21 case.

22         So that is the incentive to flee.  Let me turn now

23 to the means to flee.  We believe that Amanat has the means

24 and connections to relocate and support himself in a

25 foreign jurisdiction.  This case and this defendant have

9

ties to foreign countries.  As I said, Enable was a United

Arab Emirates entity.  The bank accounts for the wire

transfers were involved accounts in the UAE, and the UAE

does not extradite to the United States.  Analysis of the

bank account records shows us that Amanat also has wire

transfers coming in from other foreign jurisdictions

including the United Kingdom.  He also, as I said, has

boasted that he is judgment proof.

I want to note with respect to the --

THE COURT:   You said that he boasted that he was

judgment proof --

MS. GRISWOLD:   Judgment proof.

THE COURT:   -- and that he had money secreted

elsewhere around the world.

MS. GRISWOLD:   That is correct, Your Honor.

THE COURT:   Tell me a little about that.

MS. GRISWOLD:   Which brings me to the Pretrial

report and the list of assets that the defendant provided.

I want to address that.  We do not believe that this is

accurate.  The defendant says that he has $2,700 total cash

in the bank at this point and represents a negative $12,000

net worth.  What we know just in terms of his current

living situation, he was arrested at his rental home in

Short Hills, New Jersey this morning.  That home is

1

2  currently listed for $4.75 million with a rental cost of

3  17,500.  The defendant himself says that he's paying 10,000

4  a month, and that money has to be coming from somewhere.

5          THE COURT:   Just to be clear, he's the owner or

6  he's renting it from a third party?

7          MS. GRISWOLD:   We understand that it's a rental

8  property. He indicates on the Pretrial report that he lives

9  there.  Our understanding, based on our analysis, is that

10  most of the – and there are two other rental properties

11  that I'd like to mention.  Most of the rental agreements

12  are in his wife's name, but the Pretrial report represents

13  her as unemployed.  And if you look at a profile of her on

14  LinkedIn, it indicates that she works for entities

15  associated with Mr. Amanat.

16          There are two other properties that we have

17  identified, two waterfront penthouses in a luxury building

18  in the West Village.  One rents for 20,000 a month and one

19  rents for 10,000 a month.  We believe that the defendant

20  was also using these properties up until recently.  I don't

21  think he's using them anymore but was on the lease for

22  those properties, he or his wife, up until recently.

23          And then in addition to that, in 2014, in

24  connection with a litigation relating to the Aman Resorts,

25  Mr. Amanat represented that he had $100 million in liquid

```
1                                                        11
2   assets, and, of course, he also has retained counsel in
3   this case.  So we believe that there's significantly more
4   assets based on what we know about his current lifestyle
5   combined with our analysis of his bank records in the past.
6            So now I'll move to the ultimate question of the
7   conditions.  With these flights risk concerns, we really
8   believe that while conditions can be set, and we do believe
9   that the goal of finding the least restrictive conditions
10  that can ensure his appearance in court should be our
11  guiding principle here.  We cannot let this defendant out
12  on his own signature.
13           As I said earlier, defendant has numerous default
14  and bankruptcy judgments against him.  There are several
15  judges here in the United States and also abroad in the
16  United Kingdom that have identified this defendant for
17  providing false information to the court and disregarding
18  court orders.  I'll give a few examples.  2004, New York
19  State Supreme Court civil action, Judge Richard Lowe held
20  that Mr. Amanat had engaged in a pattern of blatant
21  disregard of the court's orders.  2005, Southern District
22  Bankruptcy Judge Allan Gropper found that Mr. Amanat had
23  induced his chauffeur to file an involuntary bankruptcy
24  petition against him to avoid paying certain judgments, and
25  that same judge issued additional orders in 2007, 2009, and
```

12

2010 finding that this defendant was a quote, "blatant
fraudster" and that there was overwhelming evidence that he
had acted in bad faith.

In 2009 and 2010, the defendant defaulted on a $24
million damages order that had been entered in January of
2009, and that was the same month that the losses were
being incurred in Enable.  The damages related to the 24
million related to accusations about fraudulent transfer of
proceeds from certain business transactions, and the
transfers of the proceeds was alleged to be to a Swiss bank
account and that the money was then funneled into accounts
controlled by Amanat and used for his own personal uses.
And the judge in that case upheld that order.

And in total, the Government has identified to
date at least five separate bankruptcy cases involving Mr.
Amanat since 2005 as well as more than a dozen civil
lawsuits in that same time period.

Currently, Mr. Amanat is involved in a battle over
the Aman Resorts which was purchased by Amanat and a
business partner in January of 2014 for $358 million, and
that business partner has accused Amanat of submitting
fraudulent documents that Amanat had more than $100 million
in liquid assets in order to induce the partner to do the
transaction.

```
 1                                                      13
 2              The reason I bring up that case it ties back to my
 3    point about judges finding that Mr. Amanat disregards their
 4    orders in connection with the litigation in the United
 5    Kingdom, Mr. Amanat submitted statements to that judge, and
 6    the judge found misstatements in this information and
 7    noted, and I quote, "The potential unreliability of any
 8    evidence about the financial position of entities connected
 9    with Amanat and the fact that even assurances given in good
10    faith by solicitors acting for him or his companies cannot
11    necessarily be accepted at face value."  The judge also
12    found that Mr. Amanat controlled that company and would do,
13    that is the shell company that was used in connection with
14    the hotel litigation, and that he would, quote, "do his
15    best to ensure that liabilities went unsatisfied."
16              And, finally, I would also note that there in
17    September of 2008 FINRA banned Mr. Amanat because he failed
18    to respond to requests for information, and likewise, in
19    2013 Mr. Amanat did not respond to SEC subpoenas issued in
20    connection with the conduct outlined in this case.
21              So we think this all means that there's a pattern
22    here that establishes that Mr. Amanat's representations
23    cannot be trusted and that a significant bond secured by
24    cash or property and electronic monitoring is warranted in
25    this case and that it is also warranted that he be detained
```

1                                                                14

2   until those conditions are in place.

3          THE COURT:   Thank you.  Mr. Ferguson.

4          MR. FERGUSON:   Good afternoon, Your Honor.  One

5   thing that counsel and I can agree on is that the purpose

6   here of bail is to set the least restrictive conditions

7   that will guarantee Mr. Amanat's --

8          THE COURT:   That makes it unanimous, I agree.

9          MR. FERGUSON:   And the main determination in that

10  calculus is his flight risk, and I'd like to talk about

11  several factors.  I want to discuss some of the things that

12  counsel has raised but talk about several factors that she

13  hasn't raised which, number one and I think the most

14  important for consideration here, is his family ties.  Mr.

15  Amanat is the father of six children, all of which are

16  located here in the New York area, three of which reside

17  with he and his wife.  And as indicated in the

18  presentencing report, his wife is currently expecting his

19  seventh child.

20         All of his immediate family is located here in the

21  tri-state area.  His parents, all of his aunts and uncles,

22  they all live in the New Jersey area.  He has no familial

23  ties overseas, with the exception, as the report indicates,

24  a brother who recently relocated to Singapore for business

25  reasons.  And so all of his ties are here to the community,

15

1

2  and he does not have, there is not another jurisdiction

3  where Mr. Amanat would be able to reside without, with any

4  sort of support network or any connections.

5        He's also obviously willing to surrender his

6  passport.  So he doesn't have the ability to leave the

7  country.  Which notably he was about to expire within the

8  next week or so voluntarily because he had no intention of

9  leaving the country for travel.

10        With respect to – I just saw the indictment today.

11  I'm not going to be able to speak to it with detail that

12  the Government can.  One thing I will note is that it is

13  based seemingly primarily on their cooperating witness who

14  is, as counsel just indicated, has pled guilty in an

15  entirely separate case and is currently serving an 84-month

16  sentence.

17        What I read from the indictment is that Mr. Amanat

18  brought money, made introductions between people who turned

19  out to be fraudsters, and brought money to those deals,

20  which is something that he's done throughout his

21  professional career, and it seems like in this case it was

22  with the wrong people.

23        THE COURT:  But the indictment also says, does it

24  not, that he has asked for a short-term investment into

25  Enable, but instead intended to misappropriate Mr. Maiden's

1
2   investment so as to repay other Enable investors in sort of
3   a ponzi scheme?  But maybe I'm reading too much into this.
4   It seems to suggest that your client was, in effect,
5   misappropriating money.
6           MR. FERGUSON:   Well, what I would say is Mr.
7   Maiden is the individual who's serving an 84-month sentence
8   for apparently defrauding other people.  So, again, I'm
9   only reading the charges in the indictment today, but I
10  don't think that – I think based – charging instruments
11  that's based on someone who's already convicted of
12  defrauding other people who my client happened to invest
13  with is something that the Court needs to be take into
14  consideration.
15          With respect to my client's work, as counsel
16  noted, there is currently a legal dispute with respect to
17  the ownership of an international hotel conglomerate that
18  my client brought investors into and had an equity stake
19  worth on paper in excess of $100 million.  I don't know
20  what representations specifically she's referring to about
21  his net worth, but that constituted the bulk, until very
22  recently, of his net worth on paper.
23          With respect to how he's living today, some of
24  those investors were willing to advance him money.  So as
25  part of the enterprise, business enterprise, my client was

1
2  the chairman of the holding company of various of these
3  hotels and was entitled to a million dollar a year salary.
4  He was able to borrow against that from some of the other
5  investors which is how he was able to currently finance his
6  living.  However, the primary investor, who invested over a
7  hundred million, a Russian individual, was able to
8  essentially use his influence as the primary investor in
9  the company and drive the company into effectively – and I
10 may be getting the particulars of this wrong because,
11 again, I'm knowledgeable of it as of today – but driving
12 the company underwater.  And as a result, my client's prior
13 significant net paper wealth is now worth the value of a
14 lawsuit between he and the Russian investor.
15          So that is, A, how my client was able to live in a
16 rental property which he does not own, and, B, explains
17 some of the reason why there may be a discrepancy in what
18 his net worth would've looked like on paper previously and
19 does today.
20          But at the end of the day, what we're talking
21 about is, between the Government, is the amount of the bond
22 here.  Because my concern is that my client will not have
23 the ability to secure the bond in the amount that they are
24 asking for.  And while he has relatives who would be
25 willing to cosign on a recognizance bond of I would suggest

18

1

2  a million dollars, he doesn't have the ability to actually

3  provide the security itself in the amounts that the

4  Government is asking for.

5       So I would ask that the Court abide by the

6  recommendations in the Pretrial Services report with the

7  exception of, and, again, I obviously take counsel's word

8  that this provision about security, it was a typo and that

9  there was an intention to be some amount of security there,

10  and I would ask that the Court impose those conditions, and

11  the client would obviously agree to surrender his passport

12  and to limit his travel to the metro area.  New Jersey

13  obviously is where he resides and New York State.  But that

14  the amounts that counsel is asking for may, de facto,

15  result in an incarcerative bail.

16       And for those reasons, Your Honor, I would ask

17  that the Court, rather than imposing the financial

18  conditions that the Government is asking for, impose a one

19  million personal recognizance bond with two cosigners and

20  his uncle who owns property here through a business in the

21  New York area but would be willing to cosign that one

22  million personal recognizance bond as well as his wife, and

23  that the remainder of the conditions in the Pretrial

24  Services report would be imposed.

25       THE COURT:  Miss Griswold made mention of two

1

2    other properties, and it wasn't clear to me whether they

3    were owned by the defendant or a spouse or they were simply

4    rental properties that were sublet or none of the above,

5    that they were just rental properties that formally he was

6    using.  Can you enlighten me about that?

7              (pause in proceeding)

8              MR. FERGUSON:   Your Honor, as to those

9    properties, they were rental properties.  Mr. Amanat and

10   his wife previously lived there, and after failing to pay

11   rent for six months as a result of this bankruptcy

12   litigation and his investment, his equity stake in this

13   hotel conglomerate is dissolving, he was, he and his wife

14   were evicted.  So they don't have those assets.

15             And just as a separate note, you know, it would be

16   - you could easily Google this litigation with respect to

17   the hotel franchise online and see all the details and the

18   timeline of what occurred to understand why today this

19   picture looks a lot different than it would have a short

20   time ago.

21             THE COURT:   Anything else, Miss Griswold?

22             MS. GRISWOLD:   One moment, Your Honor.

23             THE COURT:   Sure.

24             (pause in proceeding)

25             MS. GRISWOLD:   No, Your Honor.

1

2              (pause in proceeding)

3              THE COURT:   I agree with Mr. Ferguson, although

4   he didn't phrase it precisely this way, that the issue here

5   is risk of flight, not danger to the community.  But I also

6   agree with the Government that there's a significant risk

7   of flight here, notwithstanding Mr. Amanat's many roots in

8   the community, consisting largely of his family here.  And

9   I've come up with a bail package which is sort of a mixed

10  bag and also has some additional conditions.  I'm going to

11  fix bail in the amount of a $2 ½ million personal

12  recognizance bond to be cosigned by five financially

13  responsible persons and further secured by $250,000 cash or

14  property.

15             The defendant's travel will be restricted to the

16  Southern and Eastern Districts of New York and the District

17  of New Jersey.  He's to surrender all travel documents and

18  not seek new ones.  He'll be subject to strict Pretrial

19  Services supervision and home detention provided to be

20  enforced through electronic monitoring or GPS.  If he's in

21  a suburban area, GPS may be more feasible than traditional

22  telephone-based monitoring.

23             I further provided that he's to submit to

24  urinalysis and, should he test positive, would be subject

25  to drug testing and treatment, and I've provided that he's

1

2  to pay for all of the cost of the – excuse me – all or part

3  of the cost of location monitoring as determined by

4  Pretrial Services, that he's not to possess any firearms or

5  other weapons, and I've provided that his wife is to

6  surrender her passport as well, that he's to be released on

7  his own signature plus three of the five cosigners signing

8  plus the $250,000 in cash or property being posted plus the

9  electronic monitoring or GPS being in place, and the wife's

10  passport having been surrendered, and that the remaining

11  conditions may be met by July 27.

12         So on balance, Mr. Amanat, those are the least

13  restrictive conditions that would enable me to be

14  reasonably assured that you appear in court as required,

15  and you'll be held until you meet some of these conditions,

16  as I indicated.  Assuming you meet those, you'll be

17  released while you comply with the other conditions,

18  essentially two more cosigners.  But if you fail to appear

19  as required or you otherwise violate the conditions of the

20  bond, you and whoever cosigns the bond with you will each

21  become liable for the full $2 ½ million amount of the bond.

22  Whoever posts the $250,000 in cash or property will stand

23  to lose it.  And if you fail to appear as required, you

24  could be charged with the crime of bail jumping so that

25  even if these various other charges were to be dismissed,

```
 1                                                    22
 2  you could be prosecuted on that charge.  Do you understand
 3  all that?
 4          MR. AMANAT:   I do.
 5          THE COURT:   Anything further this afternoon
 6  concerning Mr. Amanat or any questions about what I've just
 7  said?
 8          MS. GRISWOLD:   Not from the Government.
 9          THE COURT:   Mr. Ferguson.
10          MR. FERGUSON:   No, Your Honor.
11          THE COURT:   Thank you.
12          (Whereupon the matter is adjourned.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                                                              23
 2                     C E R T I F I C A T E
 3
 4          I, Carole Ludwig, certify that the foregoing
 5   transcript of proceedings in the case of United States v.
 6   Amanat, Docket #15cr536, was prepared using digital
 7   transcription software and is a true and accurate record of
 8   the proceedings.
 9
10
11
12   Signature_____
13
14   Date:    July 19, 2016
15
16
17
18
19
20
21
22
23
24
25
```