**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Avi Weitzman
Direct: +1 212.351.2465
Fax: +1 212.351.5265
AWeitzman@gibsondunn.com

July 30, 2017

VIA ECF & FACSIMILE (212-805-7986)

The Honorable Paul G. Gardephe
United States District Judge for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007-1312

Re:   *United States v. Kaleil Isaza Tuzman*, S8 15 Cr. 536 (PGG)

Dear Judge Gardephe:

We respectfully submit this letter on behalf of Mr. Isaza Tuzman in response to the Government's July 27 letter regarding expert witness disclosures.  The parties have had an agreement on disclosures in place for two-and-a-half months and Mr. Isaza Tuzman has prepared for trial in reliance on that agreed-to schedule.  The government's newfound proposal for premature expert disclosure by the defendants is unworkable, unfair, and unnecessary, particularly given the anticipated one-month trial for the government's case-in-chief.  We therefore respectfully request that the Court enter an order placing expert disclosures on the same schedule as fact witnesses, and require the defense to produce expert witness disclosures one week before trial, consistent with the Court's prior practice in white collar cases.

In early May 2017, following lengthy negotiations, the parties agreed to a schedule for the identification of trial witnesses and disclosure of trial witnesses' statements.  Specifically, the parties agreed that (1) the government would produce its witness list and such witness' prior statements 30 days in advance of trial, and (2) the defense would produce its witness list and statements seven days prior to trial.  *See* Dkt. 284 at 17.  At no point did the government suggest that this schedule would be limited to percipient fact witnesses only.

More than 10 weeks later, the government for the first time indicated that the prior agreed-upon schedule did not include expert witnesses.  On July 19, 2017, AUSA Naftalis wrote to defense counsel: "One issue that the parties have not discussed is expert witnesses.  We propose that each party provide their Rule 16 expert notices, if any, 60 days before trial, i.e., August 3, 2017."  Put differently, the government requested that the defense provide any expert disclosures *within two weeks* of the government's email first raising the issue, 30 days before the government discloses its 3500 material and exhibits, and without any advance

**GIBSON DUNN**

July 30, 2017
Page 2

disclosure by the government of its own expert witnesses—despite the fact that Rule 16 requires the government to disclose its expert witnesses first.  *See* Fed. R. Crim. P. 16(b)(1)(C) (defendant must make expert witness disclosures only if "the defendant requests [expert witness] disclosure under subdivision (a)(1)(G) *and the government complies*") (emphasis added).  The government's contrary, last-minute proposal was not only belated, it was obviously unworkable.

After the defense informed the government of the defense's many reasons for rejecting this proposal, including that the parties *had agreed already* upon a schedule for the disclosure of trial witnesses and statements, the government revised its proposal.  On July 21, the government proposed that it provide expert disclosures six weeks before trial, and that defendants provide their expert disclosures three weeks before trial.  The government further insisted, without any explanation, that Mr. Isaza Tuzman disclose *six weeks* before trial any anticipated testimony from his consulting expert's ink dating analysis of five (5) handwritten notebooks turned over by Robin Smyth.  The government acknowledged that, despite Mr. Isaza Tuzman's request in June 2016 that the government conduct forensic ink examination tests of Smyth's notebooks, the government did not intend to offer any ink dating expert testimony in its case-in-chief.

The requested expert disclosure schedule in the government's July 27 letter to the Court abandons the original schedule the government proposed in its July 19 email, and requests instead that the Court adopt the disclosure schedule the government adopted in its July 21 proposal.  For the following reasons, the government's revised proposal is still unworkable, inconsistent with this Court's own prior practices, and would deprive Mr. Isaza Tuzman of his constitutional rights to present a defense.

*First*, the government's proposal is unfairly one-sided.  While the government has been investigating this case for nearly four years and thus has had ample time to line up its expert witnesses,[1] our ability to identify expert witnesses and prepare disclosures has been substantially hampered, for several reasons.

- As an initial mater, to prepare our case, we have been required to review over 1.58 million documents produced by the SEC and USAO alone, comprising several million pages of discovery.  Many of these documents lack metadata, rendering electronic searches incomplete and challenging.

---

[1] According to Jones Day, it met with the SEC in December 2012 on behalf of KIT Digital and that meeting gave rise to the government's investigation that resulted in charges against Mr. Isaza Tuzman.  Dkt. 340 at 6.

GIBSON DUNN

July 30, 2017
Page 3


- The government continues to belatedly produce voluminous documents that appear to be critical to expert witness analyses. This includes a production just last week of thousands of pages of documents, including excel spreadsheets containing thousands of lines of entries relating to wire transfers, as well as excel spreadsheets concerning trading in KITD stock, that our consulting experts must now analyze. (*See* Ex. A). What is more, the government's latest production confusingly contains duplicate bates numbers, adding unnecessary burden in uploading, reviewing, and tracking the documents. With no discovery cut-off for the government, we can only assume that the government will continue to provide document dumps that may affect expert analysis.

- The government's charges in this case have been constantly evolving and expanding. The government has improperly expanded the indictment beyond the scope authorized by the Colombian Supreme Court, in violation of the Rule of Specialty (*see* Dkt. 263 at 3-12; Dkt. 284 at 7-10), and then further expanded the indictment through a bill of particulars letter that identified a dozen alleged sham licenses while providing no information whatsoever about Mr. Isaza Tuzman's (or anyone else's) alleged involvement in those sham licenses, including when they were created, for what purpose, and how, if at all, they affected KIT Digital's financial statements (*see* Ex. B at 3).

- Despite these compounding issues with the government's discovery, the government refuses to identify documents by bates stamp that correspond to certain allegations in the indictment. *See* Ex. C. This stands in stark contrast to the government's agreement to provide co-defendant Irfan Amanat with similar information. *See* Dkt. 244 (February 27, 2017 Ltr. from Jill Shellow to the Court) ("At my meeting with the Government, the prosecutors answered most of my questions about the charges" and "also agreed to provide me with some specific information . . . and to point me in the direction of the documents and categories of documents that they believe are most relevant to the charges against Irfan Amanat[.]"). This disparate treatment by the government of defendants in the same case leaves the impression that the government is improperly reacting to Mr. Isaza Tuzman's vigorous pretrial motion practice related to the government's conduct.

In view of these challenges, Mr. Isaza Tuzman cannot possibly make expert witness disclosures in a mere six (6) weeks.

*Second*, the government's proposal is unworkable because it seeks expert witness disclosures within *one week* of receiving the government's Jenks Act materials, which will likely be hundreds or maybe even thousands of pages. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). That right is not satisfied, however, if a defendant is denied an adequate opportunity to review and analyze the government's disclosures before being required to identify his own

**GIBSON DUNN**

July 30, 2017
Page 4

expert witnesses and disclose the substance of their testimony. In a highly complex financial case like this one that spans several years and reaches back nearly one decade, one week from the production of 3500 material simply is not enough time to identify, retain, and prepare experts.

For this reason, in our prior correspondence we advised the government that Mr. Isaza Tuzman will need at least three weeks to review 3500 material and prepare his expert disclosures. That position is fully consistent with the parties' agreed upon witness disclosure schedule, wherein defendants agreed to provide their witness list and witness statements one week before trial and three weeks after the government's production of 3500 material. In an effort to accommodate the government, defendants also offered to provide expert witness disclosures *three weeks before trial* if the government provides its Jenks Act materials six weeks before trial and its expert disclosures eight weeks before trial. The government refused and instead filed its July 27 letter with this Court.

*Third*, the government has not offered and cannot show any prejudice resulting from its receipt of expert witness disclosures one week before trial. By the government's own estimation, its case-in-chief will last four weeks. Thus, there will be ample time for the government to challenge or limit any expert testimony before the defense presents its case. Indeed, it is likely that some expert witness testimony will rely on testimony in the government's case in chief, necessarily making it unlikely that expert witness disputes can be resolved pretrial.

Indeed, although the government objects to receiving expert disclosures one week before trial, this Court has approved similar expert disclosure schedules in other complex financial cases. For instance, in the *Martoma* case over which Your Honor presided, the defendant provided his expert witness disclosures on December 27, 2013, with trial scheduled to begin the following week, on January 6, 2014 (with an intervening New Year's holiday). *See, e.g., United States v. Martoma*, No. 12-CR-00973 (PGG), Dkt. 178. Other courts have permitted defendants to make expert disclosures on a similar timeline. *See, e.g., United States v. Adams*, No. 13-CR-291 (RHK/LIB), 2014 WL 12693521, at *1 (D. Minn. Jan. 13, 2014) (ordering defendant to make expert disclosures seven days before trial); *United States v. Mahaffy*, No. 05CR613(S-3)(ILG), 2007 WL 1213738, at *3 (E.D.N.Y. Apr. 24, 2007) (ten days). And, if there were any doubt, certain districts' local rules permit defendants to disclose expert materials as late as *five days* before trial as a matter of course. *See, e.g.*, E.D. Wis. Local Rule 16(a)(4); *United States v. Arms*, No. 14-CR-78, 2015 WL 3513991, at *20 (E.D. Wis. June 3, 2015) (explaining the local rules require a defendant to disclose his experts a minimum of five days before trial).

**GIBSON DUNN**

July 30, 2017
Page 5

Finally, the government's request for early disclosure (6 weeks before trial) of expert analysis by Mr. Isaza Tuzman's ink dating consulting expert is baseless. We cannot reasonably determine whether testimony from an ink dating expert is even necessary until we review the government's Jenks Act materials. To date, the government has not provided sufficient detail regarding Mr. Smyth's note-taking practices or the contemporaneous nature of those notebooks to Mr. Smyth's employment at KIT Digital. Until we receive those statements, we cannot determine whether any expert testimony is necessary. In any event, we have repeatedly invited the government to test the ink in Mr. Smyth's notebooks (*e.g.*, Ex. D), but the government has refused without explanation. Moreover, the government has already decided not to offer expert testimony on the notebook's authenticity. There can therefore be no prejudice resulting from the government receiving any expert disclosures on this issue on the same schedule that it receives the defense's other expert disclosures.[2]

For the reasons stated above, Mr. Isaza Tuzman respectfully requests that the Court order the parties to disclose their experts on the schedule the parties previously agreed to disclose all trial witnesses—the Government will disclose its expert materials 30 days in advance of trial, and the defendants will disclose their expert materials seven days in advance of trial.

Respectfully submitted,

*/s/ Avi Weitzman*

Avi Weitzman


cc.     All Counsel of Record (via ECF)

---

[2] The government's latest request to preview our expert analysis regarding ink dating of Mr. Smyth's notebooks follows its even more unreasonable demand in March 2017—7 months before the scheduled commencement of trial—that we produce a copy of our consulting expert's analysis regarding ink dating before the government provides adequate disclosures regarding Smyth's statements about the notebooks, despite the obvious materiality of those statements to our defense and the possibility that the statements constitute *Brady* material. *See* Ex. E.