UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- against -

KALEIL ISAZA TUZMAN, <u>et al.</u>,

Defendants.

No.  15-CR-536 (PGG)

ECF CASE

**NON-PARTY JONES DAY'S OPPOSITION TO DEFENDANT KALEIL ISAZA
<u>TUZMAN'S LETTER-MOTION REQUESTING ISSUANCE OF A SUBPOENA</u>**

JONES DAY

Harold K. Gordon
James P. Loonam
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile:  (212) 755-7306

# TABLE OF CONTENTS

**Page**

I.    Preliminary Statement.................................................................................. 1

II.   Factual Background ..................................................................................... 1

III.  Argument ...................................................................................................... 3

      A.    The Subpoena Seeks Materials Outside the Purview of Rule 17(c) ...................... 3

            1.    Standard for Rule 17(c) Subpoenas ...................................... 3

            2.    The Proposed Subpoena Is an Impermissible "Fishing Expedition"......... 3

            3.    The Written Statements of Jones Day Lawyers Are Not Admissible
                  Evidence at Tuzman's Criminal Trial....................................... 6

            4.    Expert Opinion Evidence Is Otherwise Available to the Defendant ....... 11

      B.    The Subpoena Calls for the Production of Documents Protected by the
            Attorney-Client Privilege and the Work-Product Doctrine ................................. 11

            1.    Attorney-Client Privilege............................................... 11

            2.    Work-Product Doctrine.................................................. 12

            3.    There Was No Waiver ................................................... 13

IV.   Conclusion .................................................................................................. 16

# TABLE OF AUTHORITIES

Page

CASES

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,
   No. 93 CV 6876, 1995 WL 598971 (S.D.N.Y. Oct. 11, 1995)................................................12

Dellefave v. Access Temporaries, Inc.,
   No. 99 CIV 6098 (RWS), 2001 WL 286771 (S.D.N.Y. Mar. 22, 2001)...................................7

Fitzpatrick v. Am. Int'l Grp., Inc.,
   No. 10 CV 142, 2011 WL 335672 (S.D.N.Y. Jan. 28, 2011)............................................12, 13

Freedman v.Weatherford Int'l Ltd.,
   No. 12 CV 2121 (LAK) (JCF), 2014 WL 3767034 (S.D.N.Y. July 25, 2014).......................15

Granite Partners L.P. v. Bear, Stearns & Co.,
   184 F.R.D. 49 (S.D.N.Y. 1999) ...........................................................................................13

Gruss v. Zwirn,
   No. 09 CV 6441 (PGG)(MHD), 2013 WL 3481350 (S.D.N.Y. July 10, 2013).....................13

Hickman v. Taylor,
   329 U.S. 495 (1947).............................................................................................................12

In re Cardinal Health, Inc. Secs. Litig.,
   No. C2 04 575 (ALM), 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007) ...............................13, 14

In re the County of Erie,
   473 F.3d 413 (2d Cir. 2007)..................................................................................................11

In Re: Ex parte Application of FINANCIALRIGHT GMBH,
   No. 17 MC 105 (DAB), 2017 WL 2879696 (S.D.N.Y. June 23, 2017) ...................................14

In re Gen. Motors LLC Ignition Switch Litig.,
   80 F. Supp. 3d 521 (S.D.N.Y. 2015)......................................................................................12

In re Natural Gas Commodities Litig.,
   232 F.R.D. 208 (S.D.N.Y. 2005) ..........................................................................................12

In re Steinhardt Partners, L.P.,
   9 F.3d 230 (2d Cir. 1993) .....................................................................................................13

In re Symbol Techs., Inc. Secs. Litig.,
    No. 05 CV 3923 (DRH) (AKT), 2016 WL 8377036 (E.D.N.Y. Sept. 30, 2016) ...................14

In re Weatherford Int'l Secs. Litig.,
    No. 11 CV 1646 (LAK) (JCF), 2013 WL 6628964 (S.D.N.Y. Dec. 16, 2013) .....................15

Police & Fire Retirement Sys. of City of Detroit v. SafeNet, Inc.,
    No. 06 CV 5797 (PAC), 2010 WL 935317 (S.D.N.Y. Mar. 12, 2010) ..................................15

SEC v. Tuzman,
    No. 15 CV 7057 (AJN) (S.D.N.Y. July 20, 2017) ...................................................................2

United States v. Barnes,
    560 Fed. Appx. 36 (2d. Cir. 2014) (unpublished) ..............................................................3, 6

United States v. Barnes,
    No. 04 CR 186 (SCR), 2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) ..........................3, 5, 7, 8

United States v. Binday,
    No. 12 CR 152 (CM), 2013 WL 4494659 (S.D.N.Y. Aug. 15, 2013) ......................................8

United States v. Carollo,
    No. 10 CR 654 (HB), 2012 WL 1195194 (S.D.N.Y. Apr. 9, 2012) ...................................9, 10

United States v. Cuthbertson,
    651 F.2d 189 (3d Cir. 1981) ...............................................................................................7, 8

United States v. Ferguson,
    No. 06 CR 137 (CFD), 2007 WL 2815068 (D. Conn. Sept. 26, 2007) .......................... passim

United States v. Fields,
    663 F.2d 880 (9th Cir. 1981) ..................................................................................................7

United States v. Forbes,
    02 CR 264, 2006 WL 8422825 (D. Conn. July 25, 2006) .....................................................10

United States v. Kovel,
    296 F.2d 918 (2d Cir. 1961) ................................................................................................11

United States v. Mendinueta-Ibarro,
    956 F. Supp. 2d 511 (S.D.N.Y. 2013) .........................................................................3, 4, 5, 6

United States v. Nixon,
    418 U.S. 683 (1974) ................................................................................................... passim

United States v. Orena,
   883 F. Supp. 849 (S.D.N.Y. 1995) .................................................................9, 10

United States v. Pena,
   No. 15 CR 551 (AJN), 2016 WL 8735699 (S.D.N.Y. Feb. 12, 2016) ........................3, 7, 8, 11

United States v. Rand,
   835 F.3d 451 (4th Cir. 2016) cert. denied, 137 S. Ct. 525, -- U.S.-- (Nov. 28,
   2016) ...............................................................................................................9

United States v. Reyes,
   239 F.R.D. 591 (N.D. Cal. 2006) .......................................................................7

United States v. Rich,
   No. 83 CR 579 (SWK), 1984 WL 845 (S.D.N.Y. Sept. 7, 1984) .............................7

United States v. Treacy,
   No. 08 CR 366 (RLC), 2008 WL 5082884 (S.D.N.Y. Dec. 1, 2008) .......................7

United States v. Tucker,
   249 F.R.D. 58 (S.D.N.Y. 2008) .......................................................................8, 9

United States v. Weissman,
   No. 01 CR 529 (BSJ), 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) ......................passim

United States v. Wittig,
   250 F.R.D. 548 (D. Kan. 2008) ..................................................................4, 5, 6, 10

United States v. Zhu,
   No. 13 CR 761 (VM), 2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014) ........................8

William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.,
   262 F.R.D. 354 (S.D.N.Y. 2009) .......................................................................12

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure, Rule 26(b)(3) .........................................................12

Federal Rules of Criminal Procedure, Rule 17 ..............................................................passim

I.      Preliminary Statement

The proposed subpoena to non-party Jones Day, requested by defendant Kaleil Isaza Tuzman (see Dkt. #340-1), fails to meet the most basic requirements of Rule 17 by failing to identify specific, relevant and admissible evidence for use in his upcoming criminal trial.  The defendant's requested subpoena is a classic "fishing expedition," calling for the production of entire categories of documents created by Jones Day lawyers and their retained financial expert in connection with "any and all investigations" Jones Day conducted on behalf of a corporate client over a five-year period.  Documents within these broad categories consist entirely of inadmissible hearsay not subject to production under Rule 17(c).  Moreover, the defendant cannot use Rule 17 to obtain analysis by an expert witness that is otherwise obtainable by the defendant through the exercise of due diligence.  And the subpoenaed documents are protected from disclosure by the attorney-client privilege and the work product doctrine.  For these reasons, the Court should deny the defendant's letter motion seeking the issuance of a Rule 17 subpoena to Jones Day.

II.     Factual Background

The audit committee of the board of directors (the "Audit Committee") of KIT Digital, Inc. ("KIT")[1] retained Jones Day in connection with an internal investigation.  (See Gordon Dec. at ¶ 4.)  In connection with that representation, Jones Day retained a financial expert, Alvarez & Marsal Disputes and Investigations, LLC ("A&M"), to assist Jones Day with providing legal advice to the Audit Committee.  (See Gordon Dec. at ¶ 5; Ex. A (Engagement Letter).)[2]  During the internal investigation, Jones Day lawyers drafted documents, a small subset of which,

---

[1] KIT Digital, Inc. was subsequently reorganized as Piksel, Inc. after emerging from bankruptcy.  (See accompanying Declaration of H. Gordon ("Gordon Dec.") at ¶ 11.)

[2] Exhibit A has been redacted for privilege.

1

consisting of certain interview memoranda, were produced to the Staff of the Securities and Exchange Commission (the "SEC") as part of KIT's cooperation with the SEC. (See Gordon Dec. at ¶ 8.) These materials were produced to the SEC pursuant to a written confidentiality agreement (the "Confidentiality Agreement") explicitly preserving the attorney-client privilege and work product protection. (See Gordon Dec. at ¶ 9, Exs. B and C.) The government has produced to the defendant most, if not all, of the small subset of lawyer-generated documents Jones Day previously produced to the SEC. (See Gordon Dec. at ¶ 10.)

The proposed subpoena would compel Jones Day to produce entire categories of documents generated in connection with its internal investigation of KIT, including: (i) all interview memoranda not already in the defendant's possession; (ii) all drafts of interview memoranda; (iii) all interview notes; (iv) all expert analyses that were provided to or summarized for any governmental entity; (v) all presentations and reports provided or prepared by Jones Day or A&M to any governmental entity, regardless of whether any documents were given to such governmental entity during such presentation; and (vi) all of Jones Day's and A&M's invoices and billing records to KIT Digital. (See Dkt. #340-1 at pp. 3-4.) The subpoena targets documents not previously produced to the SEC, including documents protected from production by the attorney work-product doctrine and attorney-client privilege.[3]

---

[3] KIT asserts privilege claims over the requested documents. (See Gordon Dec. at ¶ 11.) Tuzman previously sought to obtain these same documents through less restrictive civil discovery, but withdrew the civil subpoena following a hearing in a related SEC matter to address a subpoena served on another law firm. See SEC v. Tuzman, No. 15 CV 7057 (AJN) (S.D.N.Y. July 20, 2017), Conf. Tr. at 3-4, attached to Gordon Dec. as Ex. E (Magistrate Judge Cott questioning whether "this subpoena in this civil action . . . is being utilized in a way to circumvent what should be litigated or otherwise addressed in the criminal case."). The U.S. Attorney's Office recently raised this potential abuse of civil discovery with the Court. (See Dkt. #350 at 4 n.5.)

III.    Argument

The defendant's letter motion should be denied on multiple grounds.  As a threshold matter, the requested subpoena does not meet the requirements recognized in United States v. Nixon, 418 U.S. 683, 698 (1974).  It also calls for the production of materials that are protected by the attorney-client privilege and the work-product doctrine.

A.    The Subpoena Seeks Materials Outside the Purview of Rule 17(c)

1.    Standard for Rule 17(c) Subpoenas

Rule 17 subpoenas "are not intended to provide a means of discovery for criminal cases." Nixon, 418 U.S. at 698 (citing Bowman Dairy Co., v. United States, 341 U.S. 214, 220 (1951)).[4] Rather, "[t]he purpose of rule 17(c) is to facilitate the trial by designating a time and place prior to trial to obtain and inspect evidentiary material."  United States v. Barnes, No. 04 CR 186 (SCR), 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008).  A subpoena's proponent bears the burden of proving that the subpoena seeks only documents that are (i) relevant, (ii) admissible, (iii) specifically identified, and (iv) not otherwise procurable by the exercise of due diligence. See Nixon, 418 U.S. at 699–700.[5]

2.    The Proposed Subpoena Is an Impermissible "Fishing Expedition"

The proponent of a Rule 17 subpoena must "reasonably specify the information contained or believed to be contained in the documents sought rather than merely hope that something useful will turn up."  United States v. Mendinueta-Ibarro, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (citing United States v. Louis, No. 04 CR 203, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27,

---

[4] Accord United States v. Barnes, 560 Fed. Appx. 36, 39 (2d. Cir. 2014) (unpublished) ("Rule 17 subpoenas are properly used to obtain admissible evidence, not as a substitute for discovery.") (citing United States v. Murray, 297 F.2d 812, 821 (2d Cir. 1962) (observing that subpoenaed materials must themselves be admissible)).

[5] See also Barnes, 560 Fed. Appx. at 39-40;  United States v. Pena, No. 15 CR 551 (AJN), 2016 WL 8735699, at **2-3 (S.D.N.Y. Feb. 12, 2016);  United States v. Ferguson, No. 06 CR 137 (CFD), 2007 WL 2815068, at *2 (D. Conn. Sept. 26, 2007).

2005)).  If the proponent of the subpoena "cannot reasonably specify the information contained

or believed to be contained in the documents sought but merely hopes something useful will turn

up, the requirement of specificity will not have been met."  United States v. Weissman, No. 01

CR 529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002).  The subpoena's proponent

may not rely on "mere speculation" as to the contents of the material sought.  See, e.g.,

Ferguson, No. 06 CR 137 (CFD), 2007 WL 2815068, at *4 n.15 (D. Conn. Sept. 26, 2007)

(quashing subpoena when "purported need for exculpatory materials actually seems to be little

more than mere speculation as to the contents of [the] files").  In addition, "[s]ubpoenas seeking

'any and all' materials, without mention of specific admissible evidence, justify the inference

that the defense is engaging in the type of 'fishing expedition' prohibited by Nixon."

Mendinueta-Ibarro, 956 F. Supp. 2d at 513 (internal quotation marks omitted) (citing Louis,

2005 WL 180885, at *5).

Accordingly, the court in Weissman quashed a subpoena served on a law firm for

interview memoranda and notes of statements made by four identified witnesses.  See 2002 WL

31875410, at *1.  Just as Tuzman argues here, the defendant in Weissman argued that the

documents sought may have contradicted future trial testimony or shown bias or state of mind.

Id.  The court rejected that argument based on Nixon's prohibitions against fishing expeditions.

Id.; accord United States v. Wittig, 250 F.R.D. 548, 552-53 (D. Kan. 2008) (denying motion to

issue a subpoena to an attorney for non-privileged communications with the government

concerning a discrete subject matter during a 19-day period based on the proposed subpoena's

lack of specificity).

Here, too, the demand for "all" documents in various general categories is a prohibited fishing expedition.  See Mendinueta-Ibarro, 956 F. Supp. 2d at 513.[6]  This conclusion is reinforced by the highly general scope of the requested subpoena, which is far less specific even than the subpoena rejected in Weissman.  The defendant here requests any interview memoranda not already in his possession, all draft interview memoranda, all notes related to interviews, and all attorney billing records created in connection with the internal investigation of KIT over a five-year period.  (See Dkt. #340-1 at pp. 3-4.)  The defendant does not limit his request to a specific number of identified witnesses as even the defendant in Weissman did.[7]  Moreover, the defendant does not specify what admissible evidence is contained in the requested categories of documents; rather, Tuzman offers only speculation that the documents, which include law firm bills, law firm presentations and financial expert analysis, may contain prior inconsistent statements of presently unidentified potential government witnesses at trial,[8] or evidence of the mental and emotional condition of the same unspecified witnesses, or statements that could be admissible for a non-hearsay purpose to show a motive by KIT management to falsely implicate the defendant in criminal conduct to avoid regulatory scrutiny.  (See Dkt. #340 at pp. 1, 4-5.[9])

---

[6] See Barnes, 2008 WL 9359654, at *4  ("The Defendant blindly seeks 'all' documents and recordings that fall into several categories for an approximate 23-month period rather than identifiable pieces of evidence.  The fact that the subpoena is crafted to encompass such a broad swath of items indicates that the subpoena was intended as a discovery device rather than as a mechanism for obtaining specific admissible evidence");  Wittig, 250 F.R.D. at 552-53 (D. Kan. 2008) (same).

[7] Nor does the defendant limit the requested documents to a discrete subject matter as the defendant in Wittig did; rather the defendant seeks documents generated by Jones Day and its agents in connection with "any and all investigations that [Jones Day] conducted on behalf of KIT digital and/or its Board of Directors or Audit Committee" over a five-year period.  (Dkt. #340-1 at 6-8.)  See Wittig, 250 F.R.D. at 552-53;  Ferguson, 2007 WL 2815068 (D. Conn. Sept. 26, 2007) (subpoena for all attorney notes and memoranda from an internal investigation failed to meet the Nixon standard).

[8] The defendant's assertion is necessarily speculative as he does not know the substance of any future trial testimony.

[9] The defendant baldly asserts: "Based on our investigation and documents produced by the government and by the [SEC] to date, the documents requested in the subpoena[] would show that [KIT's] management sought to falsely implicate Mr. Isaza Tuzman in criminal conduct to avoid scrutiny from the SEC."  (Dkt. #340 at 1.)  The

The defendant's speculation is wholly insufficient to meet the specificity prong set forth by

Nixon.  See Barnes, 560 Fed. Appx. at 39-40 (quashing subpoena as a fishing expedition where

defendant proffered only speculation that the government's cooperating witnesses were

conspiring to testify falsely at trial and that the subpoenaed material would so demonstrate);

Mendinueta-Ibarro, 956 F. Supp. 2d at 513 (citing United States v. Louis, No. 04 CR 203 (LTS),

2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005));  Weissman, 2002 WL 31875410, at *1;

Ferguson, 2007 WL 2815068, at *4, n.15;  Wittig, 250 F.R.D. 548, 552-53.

The Court should deny the motion in its entirety on the basis that the proposed subpoena

is a prohibited fishing expedition.

           3.     **The Written Statements of Jones Day Lawyers Are Not Admissible Evidence at Tuzman's Criminal Trial**

In addition, the defendant's requested subpoena calls for the production of interview

memoranda, draft interview memoranda, interview notes, presentations, reports and bills, all

drafted by Jones Day lawyers.  (See Dkt. #340-1 at 3-4.)  These materials are inadmissible

double hearsay, consisting of out-of-court statements by lawyers reflecting, among other things,

attorney impressions of out of court statements made by KIT employees and others.  See

Ferguson, 2007 WL 2815068, at *3 (attorney notes and memoranda are inadmissible hearsay);

_____

(continued…)

wholesale absence of any evidence or explanation in support of this sentence underscores its entirely speculative character.  Defendant's supposition that management and employees of a publicly traded company would implicate their former Chief Executive Officer in a massive criminal fraud scheme involving the company and company accounts to avoid regulatory scrutiny defies common sense and experience.  In any event, the defendant offers no explanation how, even if corporate employees had otherwise been willing to engage in such a scheme, it would have allowed KIT to avoid regulatory scrutiny, rather than invite it.  Nor, most importantly, does the defendant explain, let alone with the required particularity and specificity, how the requested documents would "show" this improbable scheme.  Even apart from all of this, defendant's single unsupported sentence fails even to allege which materials would falsely implicate him, let alone make the necessary showing that every single document subject to the subpoena would do so.  See Wittig, 250 F.R.D. at 552 ("[C]onclusory allegations of relevance and admissibility are insufficient.").

Weissman, 2002 WL 31875410, at *1 (attorney memoranda and notes are inadmissible hearsay and are not prior statements of witnesses for impeachment purposes unless adopted by the witnesses);  Dellefave v. Access Temporaries, Inc., No. 99 CIV 6098 (RWS), 2001 WL 286771, at *3 (S.D.N.Y. Mar. 22, 2001) (attorney notes of witness's statements "constituted double or triple hearsay").

Inadmissible hearsay documents are not subject to disclosure under Rule 17.  See Barnes, 2008 WL 9359654, at *4 ("[I]t appears that many of the recordings and documents sought would likely constitute hearsay or contain privileged material which would render them inadmissible. Thus the Defendant fails to make the necessary preliminary showing that . . . the subpoenaed items are admissible.").[10]  The defendant's argument that the documents sought by the proposed subpoena "may be admissible as . . . prior inconsistent statements" is entirely insufficient.  (Dkt. #340 at pp. 4-5, emphasis added.)  A party may not use a Rule 17 subpoena to compel the production of documents that are otherwise inadmissible hearsay to obtain potential impeachment material.  See United States v. Pena, No. 15 CR 551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016) ("Rule 17(c) subpoenas may not issue prior to trial to obtain materials usable only to impeach") (citing United States v. Cherry, 876 F. Supp 547, 553 (S.D.N.Y. 1995) ("Courts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment")).[11]  This

---

[10] See also United States v. Rich, No. 83 CR 579 (SWK), 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984) ("Rule 17(c) requires a showing that the materials sought are currently admissible in evidence; it cannot be used as a device to gain understanding or explanation."); United States v. Cuthbertson, 651 F.2d 189, 195 (3d Cir. 1981) (materials which were hearsay on their face and therefore not admissible as evidence at trial were not subject to Rule 17(c) subpoena).

[11] See also United States v. Treacy, No. 08 CR 366 (RLC), 2008 WL 5082884, at *2 (S.D.N.Y. Dec. 1, 2008) (same);  United States v. Ferguson, No. 06 CR 137 (CFD), 2007 WL 2815068, at *3 (D. Conn. Sept. 26, 2007) ("[I]mpeachment materials are not properly obtained through a 17(c) subpoena.  Nixon requires the subpoena's proponent to provide a specific basis for the admissibility of the documents sought[.]" (citation omitted));  United States v. Reyes, 239 F.R.D. 591, 601 (N.D. Cal. 2006) ("Rule 17(c) does not entitle [the

is because a defendant cannot know with any certainty in advance of trial the identities of the government's witnesses, or more importantly, the substance of their testimony, and therefore cannot show that the requested documents contain admissible impeachment material.  In any event, here, the requested materials contain statements of Jones Day attorneys, not the potential trial witnesses, and therefore these documents will remain inadmissible hearsay throughout the trial regardless of the substance of the testimony of the witnesses.  See Weissman, 2002 WL 31875410, at *2 (Lawyers' notes and memoranda were not potential prior inconsistent statements of trial witnesses) (citing United States v. Imonte, 956 F.2d 27, 29 (2d Cir. 1992) ("A third party's characterization of a witnesses' statement does not constitute a prior statement unless that witness subscribed to that characterization.")).

The defendant cites United States v. Tucker, 249 F.R.D. 58 (S.D.N.Y. 2008), which declined to follow Nixon and employed a relaxed standard to third-party subpoenas issued under Rule 17(c).  See Tucker, 249 F.R.D. at 66.  But numerous cases from this district and elsewhere have declined to follow Tucker.  See Pena, 2016 WL 8735699, at *1;  Barnes, 2008 WL 9359654, at *3 ("Though the Tucker court found this relaxed standard appropriate, it is not the prevailing law.  Indeed, all district courts within the Second Circuit, aside from the Tucker court, have applied the Nixon analysis to third-party subpoenas issued by the defense.  This Court will not disregard Nixon and its progeny in assessing the validity of this Rule 17(c) subpoena.").[12]

_____

(continued…)

defendant] to the pre-trial production of impeachment material."); Weissman, 2002 WL 31875410, at **1-2 (same); United States v. Fields, 663 F.2d 880, 881 (9th Cir. 1981) ("The only evidentiary use that defendants have been able to advance is that the statements and transcribed interviews of witnesses could be used for impeachment purposes. This use is generally insufficient to justify the pretrial production of documents.");  Cuthbertson, 651 F.2d at 195 (same).

[12] See also United States v. Zhu, No. 13 CR 761 (VM), 2014 WL 5366107, *2 (S.D.N.Y. Oct. 14, 2014) ("[U]ntil the Supreme Court or the Second Circuit accepts [Judge Scheindlin's analysis], this Court will apply Nixon, which does not by its terms provide an exception for defense subpoenas to third parties.");  United States v.

In any event, <u>Tucker</u> is wholly inapplicable here by its terms.  In <u>Tucker</u>, one business day before trial was set to begin, the defendant sought to subpoena recordings of prison telephone conversations of three identified cooperating witnesses the government intended to call at trial.  <u>See</u> <u>Tucker</u>, 249 F.R.D. at 59, 65-66.  The defendant in <u>Tucker</u> presented evidence that one of these cooperating witness had discussed undisclosed inducements to cooperate with the government on one such recorded call.  <u>See</u> <u>id</u>. at 65-66.  The potential admissibility and importance of such undisclosed inducements was clear given the government's announced intention to call the cooperating witnesses pursuant to signed cooperation agreements (which typically contain all inducements to cooperate with the government).  <u>Id</u>. at 66.  In light of these unusual circumstances, the court in <u>Tucker</u> allowed the defendant to subpoena the other recorded prison calls despite the defendant's inability to articulate the admissible evidence contained on those recordings.  The court held that, on the eve of trial, a criminal defendant need only show an "articulable suspicion that the documents may be material to the defense."  <u>Id</u>.  None of the extenuating circumstances, specificity, evidentiary support or clarity of potential admissibility

---

(continued…)

<u>Binday</u>, No. 12 CR 152 (CM), 2013 WL 4494659, at *1 (S.D.N.Y. Aug. 15, 2013) ("Until the Supreme Court or the Second Circuit accepts Judge Scheindlin's analysis . . . which has not yet happened—this court will follow the Supreme Court's decision in <u>United States v. Nixon</u>, 418 U.S. 683 (1974), which binds me and which is not by its terms limited to subpoenas issued by the Government.");  <u>United States v. Ferguson</u>, 06 CR 137 (CFD), 2007 WL 2815068 *2 (D. Conn. Sept. 26, 2007) (refusing to adopt a relaxed standard for Rule 17 subpoenas issued to third-parties, describing the relevant standard as "well-settled.").  The Fourth Circuit also recently rejected the argument that <u>Nixon</u> does not apply to third-party subpoenas.  <u>See</u> <u>United States v. Rand</u>, 835 F.3d 451, 462-63 (4th Cir. 2016) ("We decline to adopt a lower standard for third-party subpoenas under Rule 17(c) and find that the district court applied its correct standard.  In <u>Nixon</u>, the Supreme Court reiterated that the subpoena <u>duces</u> <u>tecum</u> was not intended to provide a means of discovery for criminal cases.  Importantly, the Court did not cabin this purpose to discovery from the government.") <u>cert</u>. <u>denied</u>, 137 S. Ct. 525, -- U.S.--, (Nov. 28, 2016).

present in <u>Tucker</u> exists with respect to the categories of documents contained in the defendant's requested subpoena.  <u>Tucker</u> is therefore inapposite.[13]

The court in <u>Ferguson</u> was confronted with subpoena requests similar to those made by the defendant in this case.  <u>See</u> 2007 WL 2815068, at **1-2.  In <u>Ferguson</u>, the defendant served subpoenas on law firms and corporations, seeking attorney notes, interview memoranda and other material created (i) in connection with meetings between government attorneys and identified cooperating witnesses, who had been named as potential witnesses in the government's pre-trial witness list, and (ii) during the course of internal investigations.  <u>See</u> <u>id</u>. at **1-3.  The court quashed the subpoena because there was no basis to admit the notes and memoranda at trial, and because Rule 17 cannot be used to obtain impeachment material.  <u>See</u> <u>id</u>. at **3-4 (citing <u>Nixon</u>, 481 U.S. at 701);  <u>United States v. Forbes</u>, 02 CR 264 (AHN), 2006 WL 8422825, *3 (D. Conn. July 25, 2006) (denying Rule 17 subpoena for counsel's correspondence with government because the documents would be inadmissible at trial);  <u>see</u> <u>also</u> <u>Weissman</u>, 2002 WL 31875410, at *1.[14]

---

[13] The defendant's reliance on <u>United States v. Carollo</u>, No. 10 CR 654 (HB), 2012 WL 1195194 (S.D.N.Y. Apr. 9, 2012), and <u>United States v. Orena</u>, 883 F. Supp. 849, 869 (S.D.N.Y. 1995), is similarly misplaced.  In both <u>Carollo</u> and <u>Orena</u> the defendants sought to subpoena specific tax and financial documents of identified cooperating witnesses (who pleaded guilty) showing transactions that were arguably part of the witnesses' motivation for cooperating with the government.  <u>See</u> <u>Carollo</u>, 2012 WL 1195194 at **1-2; <u>Orena</u>, 883 F. Supp. at 869.  The defendant in this case does not seek analogous documents.  The defendant seeks privileged and work product protected materials reflecting the impressions of Jones Day lawyers, or Jones Day's forensic accountants, of an internal investigation, which occurred separate and apart from any underlying criminal conduct that could give rise to an inducement to cooperate in a criminal case.

[14] The defendant claims that the requested documents <u>may</u> be admissible to show the "then-existing mental and emotional condition" of unspecified potential witnesses.  (Dkt. #340 at 4.)  But he does not explain which documents may be admissible on such grounds, why the mental state of witnesses from years ago is relevant to the trial, or how the requested documents would tend to show such a mental state even if it were somehow relevant.  The same is true of the defendant's assertion that the requested documents may be offered for a non-hearsay purpose.  (Dkt. #340 at 4.)  Such bald assertions are insufficient to meet the defendant's burden under <u>Nixon</u>.  <u>See</u> <u>Wittig</u>, 250 F.R.D. at 552 ("[C]onclusory allegations of relevance and admissibility are insufficient.").

The same analysis applies here.  There is no basis for admitting the hearsay statements of Jones Day lawyers at the trial.  For this reason, the defendant's letter motion for a Rule 17 subpoena should be denied.

4.      Expert Opinion Evidence Is Otherwise Available to the Defendant

The defendant seeks to subpoena all expert analyses conducted as part of the internal investigation that was shared with or summarized for any government entity.  (See Dkt. #340-1 at 4.)  He does not argue that the government intends to introduce such expert analyses at trial, nor does he explain why (or even contend that) the expert analyses conducted during the internal investigation would be more probative than that of any other expert witness.  Apart from the lack of admissibility and specificity discussed above, this request should be denied because defendant could retain his own expert to perform whatever analysis he believes is relevant to his defense. Thus, the information the defendant seeks is available to him through the exercise of due diligence, and therefore is not subject to a Rule 17(c) subpoena.  See Nixon, 418 U.S. at 699–700;  Pena, 2016 WL 8735699, at *3 (S.D.N.Y. Feb. 12, 2016);  Ferguson, 2007 WL 2815068, at *4 (D. Conn. Sept. 26, 2007).

B.      The Subpoena Calls for the Production of Documents Protected by the Attorney-Client Privilege and the Work-Product Doctrine

Because the proposed subpoena fails the requirements of Rule 17, the motion should be denied even apart from privilege issues.  The Court need not even reach the privilege arguments raised by defendant.  Nonetheless, defendant is also wrong in his arguments on the privilege issue, and this provides another independent ground for denial.

1.      Attorney-Client Privilege

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal advice.  See, e.g., In re the County

of Erie, 473 F.3d 413, 420 (2d Cir. 2007).  Communications with an agent or consultant employed to give technical assistance in an investigation or litigation are protected by attorney-client privilege.  See United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961) (accountant's communications with law firm protected by attorney-client privilege).[15]  Because law firm billing invoices reflect attorney strategy and advice, they, too, are protected by the attorney-client privilege.  See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., No. 93 CV 6876, 1995 WL 598971, at *2 (S.D.N.Y. Oct. 11, 1995) (denying motion to compel production of billing documents where they "would tend to reveal the precise nature of representation that [the law firm] rendered").

### 2.    Work-Product Doctrine

An attorney's work product (and the work product of an attorney's agent) prepared in anticipation of litigation is immune from discovery absent a showing by the proponent of a subpoena of a substantial need for the materials and an inability to obtain their substantial equivalent elsewhere.  See Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495 (1947). The protection against disclosure is particularly strong where the work product contains an attorney's (or the attorney's agent's) mental impressions, conclusions, opinions or legal theories. See In re Natural Gas Commodities Litig., 232 F.R.D. 208, 212 (S.D.N.Y. 2005) (citing United States v. Adlman, 134 F.3d 1194, 1204 (2d Cir. 1998)).

The proposed subpoena calls for Jones Day interview notes, memoranda and related documents.  "Interview notes and memoranda produced in the course of similar internal investigations have long been considered classic attorney work product."  In re Gen. Motors LLC

---

[15]  See also Fitzpatrick v. Am. Int'l Grp., Inc., No. 10 CV 142, 2011 WL 335672, at *4 (S.D.N.Y. Jan. 28, 2011) (attorney-client privilege and work product protection extends to documents created by forensic accounting company where the work "serv[ed] a bona fide need of the attorneys to assist them to undertake their counseling and other lawyerly functions on behalf of defendants").

Ignition Switch Litig., 80 F. Supp. 3d 521, 532 (S.D.N.Y. 2015).[16]  Similarly, the expert analysis

of Jones Day's retained financial expert, A&M, is protected work product.  See, e.g., Fitzpatrick,

2011 WL 335672, at *4.

> 3.    There Was No Waiver

Not every disclosure of protected material to a government agency waives the privileges.

See In re Steinhardt Partners, L.P., 9 F.3d 230, 236 (2d Cir. 1993);  In re Cardinal Health, Inc.

Secs. Litig., No. C2 04 575 (ALM), 2007 WL 495150, *5 (S.D.N.Y. Jan. 26, 2007);  Gruss v.

Zwirn, No. 09 CV 6441 (PGG)(MHD), 2013 WL 3481350, at *6 (S.D.N.Y. July 10, 2013)

(recognizing common interest exception to Steinhart, but finding it inapplicable on the facts).  In

Steinhart, the Second Circuit made clear that, while disclosures to an agency in an adversarial

posture could effect a waiver, it noted an exception to its holding where, among other things,

"the disclosing party and the government . . . share a common interest in developing legal

theories and analyzing information."  9 F.3d at 236.

Here, the disclosure of a subset of documents created during the course of the internal

investigation did not trigger any waiver.  The relationship between KIT and the SEC when the

disclosures were made was cooperative and non-adversarial.  KIT, not the agency, initiated the

December 6, 2012 meeting with the SEC that gave rise to the investigation following an internal

investigation into certain accounting issues.  (See Gordon Dec. at ¶ 7.)  The investigation had

uncovered significant accounting irregularities and evidence of misconduct, which KIT publicly

disclosed in a November 2012 Form 8-K filing.  (See Gordon Dec. at ¶ 6.)  KIT alerted the SEC

---

[16] See, e.g., William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co., 262 F.R.D. 354, 359 (S.D.N.Y. 2009) ("The [work product] doctrine extends to notes, memoranda, witness interviews, and other materials, whether they are created by an attorney or by an agent for the attorney." (internal quotation marks omitted));  Granite Partners L.P. v. Bear, Stearns & Co., 184 F.R.D. 49, 52 (S.D.N.Y. 1999) (same);  In re Cardinal Health, Inc. Secs. Litig., No. C2 04 575 (ALM), 2007 WL 495150, at *5 (S.D.N.Y. Jan. 26, 2007) (same).

to the issues and worked closely and cooperatively with the SEC Staff, developing common evidence and legal theories based upon a common interest in addressing the improprieties that KIT had discovered.  Indeed, in defendant's submission to the district court in the civil case in support of his now-withdrawn subpoena seeking substantially the same materials, he expressly admitted that KIT's disclosures were motivated by a "cooperati[ve]" desire to work with the SEC.  (See Gordon Dec., Ex. D at 5.)

In Cardinal Health, an internal audit committee investigation uncovered evidence that "certain employees might have engaged in improper practices."  2007 WL 495150, at *1.  The company informed the SEC, and its counsel "determined that its mandate was the same as that of the SEC."  Id.  "[W]orking closely" with the SEC, the law firm "shared issues, evidence, and theories with the SEC . . . in fulfilling the mandate of the Audit Committee."  Id.  The court held that the Steinhardt "common interest" exception applied on those facts, and that, "[a]ccordingly, the protection of the work product doctrine ha[d] not been waived by [the law firm] or the Audit Committee sharing such documents with the SEC."  Id. at *9.

The defendant's attempt to distinguish Cardinal Health is unavailing.  (See Dkt. #340 at 6.)  The cooperation in this case was of the same exact nature to that in Cardinal Health, and the Court made clear in that case that the materials at issue were shared "in the face of almost certain litigation between Cardinal and the SEC or USAO."  2007 WL 495150, at *9.

In addition, the disclosure to the SEC was made pursuant to a written confidentiality agreement.  Disclosures made pursuant to written confidentiality agreements regularly preclude finding a waiver.  See, e.g., In re Ex parte Application of FINANCIALRIGHT GMBH, No. 17 MC 105 (DAB), 2017 WL 2879696, at **6-7 (S.D.N.Y. June 23, 2017);  In re Symbol Techs., Inc. Secs. Litig., No. 05 CV 3923 (DRH) (AKT), 2016 WL 8377036, at *14 (E.D.N.Y. Sept. 30,

14

2016);  Police & Fire Retirement Sys. of City of Detroit v. SafeNet, Inc., No. 06 CV 5797
(PAC), 2010 WL 935317, at *1 (S.D.N.Y. Mar. 12, 2010).

        In any event, even if the disclosure had amounted to a waiver (which it did not), such
waiver would still have been limited to the documents actually disclosed, and not to non-
disclosed material, even if related.  In Freedman v. Weatherford Int'l Ltd., No. 12 CV 2121
(LAK) (JCF), 2014 WL 3767034, at **3-4 (S.D.N.Y. July 25, 2014), the court rejected the
plaintiffs' request for "all fact-based portions of interview notes, memoranda, attorney e-mails,
and other investigative materials, regardless of whether they were produced to the SEC," based
on alleged waiver by disclosure of related materials to that agency.  Similarly, in In re
Weatherford Int'l Secs. Litig., No. 11 CV 1646 (LAK) (JCF), 2013 WL 6628964 (S.D.N.Y. Dec.
16, 2013), the court found that "information is discoverable if it has been actually disclosed or
referenced in such detail that it has been 'effectively produced' to an investigatory government
agency."  Id. at *2.  Thus, "interview materials need not be produced unless those specific
materials are explicitly identified, cited, or quoted in information disclosed to the SEC," id. at *3.

IV.     Conclusion

For each of the foregoing reasons, non-party Jones Day respectfully requests that the

Court deny the defendant's motion to issue a Rule 17 subpoena to non-party Jones Day.


Dated: New York, New York                          Respectfully submitted,
         August 11, 2017
                                                   JONES DAY

                                                   */s/ Harold K. Gordon*
                                                   Harold K. Gordon
                                                   James P. Loonam
                                                   250 Vesey Street
                                                   New York, NY 10281
                                                   Telephone: (212) 326-3939
                                                   Facsimile:  (212) 755-7306
                                                   hkgordon@jonesday.com
                                                   jloonam@jonesday.com

                                                   *Attorneys for Non-Party*
                                                   *Jones Day*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 11, 2017, the foregoing NON-PARTY JONES DAY'S

OPPOSITION TO DEFENDANT KALEIL ISAZA TUZMAN'S LETTER-MOTION

REQUESTING ISSUANCE OF A SUBPOENA, dated August 11, 2017, was served

simultaneously with filing by the Court's Electronic Case Filing system upon all counsel of

record.

Dated: New York, New York
　　　　August 11, 2017

　　　　　　　　　　　　　　　　　　*Harold K. Gordon*　　　　　　
　　　　　　　　　　　　　　　　　　Harold K. Gordon