**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Avi Weitzman
Direct: +1 212.351.2465
Fax: +1 212.351.5265
AWeitzman@gibsondunn.com

August 14, 2017

VIA ECF & FACSIMILE

The Honorable Paul G. Gardephe
United States District Judge for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007-1312

Re:   *United States v. Kaleil Isaza Tuzman*, S8 15 Cr. 536 (PGG)

Dear Judge Gardephe:

      We are counsel for Kaleil Isaza Tuzman in the above-referenced action scheduled for trial beginning on October 2, 2017. We write to alert the Court to the government's improper and clandestine use of Rule 17(c) subpoenas to obtain pretrial document discovery without prior judicial approval. Particularly in light of our own Rule 17(c) subpoena requests that were properly filed *ex parte* nearly one month ago on July 19, 2017, the government's improper trial subpoenas in this case make the one-sided nature of criminal discovery particularly egregious and prejudicial. Accordingly, we respectfully (a) renew our prior requests of July 19, July 24, and July 28, 2017, for the issuance of pre-trial document subpoenas; (b) request that the Court exercise its inherent supervisory authority to obtain copies of all government-issued trial subpoenas for documents (including cover letters thereto); and (c) request that the Court presumptively quash all government-issued trial subpoenas and accompanying requests for pretrial production of documents pending further determination of the appropriate remedies for the government's abuse of process.

      On August 11, 2017, our client received an email from Harvard University that contained a copy of a government-issued "Court Subpoena" demanding production ***by August 21, 2017*** of, among other things, Mr. Isaza Tuzman's application for undergraduate admission, academic transcript, and "all" documents related to "any disciplinary actions, or considered disciplinary actions, for Tuzman." (*See* Exhibit A, appended hereto.) The Subpoena was signed by the U.S. Attorney and an AUSA handling this matter, but did not bear the Court's signature. In addition to the overbreadth of this classic fishing-expedition subpoena, there were three noteworthy and improper aspects to the subpoena and accompanying cover letter:

**GIBSON DUNN**

August 14, 2017
Page 2

- While the face of the subpoena had an appearance date of October 2, 2017, the cover letter accompanying the subpoena signed by the federal prosecutors supervising this matter stated: "We request that you produce the requested the [sic] documents by August 21, 2017," *i.e.*, within two weeks of its issuance and six weeks before trial;

- The U.S. Attorney's cover letter incorrectly referred to the subpoena as a "Court Subpoena" instead of a "Trial Subpoena," which suggested (falsely) that the Court had authorized issuance of the subpoena even though it is not signed by the Court;

- The cover letter improperly requested that Harvard University refrain from disclosing the existence of the subpoena to any third parties—presumably including Mr. Isaza Tuzman—despite the University's legal obligations to make such disclosure.

Courts in this Circuit have adopted the majority position that subpoenas requesting document production prior to the start of trial can only be issued with judicial approval—***not***, as the government did here, by unilaterally mailing a cover letter to a third party asking for compliance within two weeks and secrecy about "the existence of this subpoena." (*See* Ex. A at 2.)[1] "While Rule 17(c) does not explicitly require a party to make a motion to secure issuance of a *subpoena duces tecum* returnable before trial, the use of a motion to invoke the court's discretion in advance of issuing such a subpoena has been recognized by many courts as an 'orderly and desirable procedure and one frequently followed.'" *United States v. Boyle*, No. 08 CR 523, 2009 WL 484436, at *3 (S.D.N.Y. Feb. 24, 2009) (*quoting United States v. Weissman*, No. 01 CR 529, 2002 WL 1467845, at *1 (S.D.N.Y. July 8, 2002)); *see also United States v. Gonzalez*, 94 CR. 134, 2002 WL 31641109, at *8 (S.D.N.Y. Nov. 13, 2002) (collecting authority); J. Moore, MOORE'S FEDERAL PRACTICE ¶ 17.06 (2d ed. 1996) (use of a motion is "an orderly and desirable procedure and one often followed"). The practice of requesting court approval before serving Rule 17(c) subpoenas is so widely respected that the government cannot feign ignorance of its obligation to do so; indeed, that substantial weight of authority is why Mr. Isaza Tuzman—despite the lack of clarity in the text of Rule 17—sought this Court's permission for defensive third-party subpoenas in an abundance of caution.

---

[1] That the subpoena to Harvard University technically bears a return date of October 2, 2017 (the date trial begins) is of no moment because the letter accompanying it requests production of "the documents by August 21, 2017," a pretrial production date the university apparently intends to comply with. (Ex. A at 1, 2.)

**GIBSON DUNN**

August 14, 2017
Page 3

The analysis provided recently in this regard by the Honorable Emmet G. Sullivan of the United States District Court for the District of Columbia is particularly instructive. In *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171 (D.D.C. 2015), the court was confronted with Rule 17(c) subpoenas that had return dates during the defendant's trial but nonetheless requested compliance "by promptly providing the undersigned Assistant U.S. Attorney with [the requested documents]" prior to trial. *Vo*, 78 F. Supp. 3d at 174 (alteration in original). Judge Sullivan brushed aside the government's suggestion that it was merely "'inviting' subpoenaed parties to make a pretrial production to it directly," which actions the government contended were "authorized because nothing specifically prohibits them." *Id.* Instead, Judge Sullivan held "that Rule 17 does not authorize pretrial production absent Court approval" and explained the important rationale for such a requirement: "The Rule, in 'leaving advance production to the court's discretion[,] is no mere technicality. It is a vital protection against misuse or improvident use of such subpoenas.'" *Id.* at 179 (quoting *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)) (alterations in original). "Without the Court's supervision, Rule 17(c) would lend itself to discovery of the broadest sort—a result that the drafters of the Rule decried." *United States v. Finn*, 919 F. Supp. 1305, 1329 (D. Minn. 1995). In reaching a similar holding barring pretrial document subpoenas absent court approval, the United States District Court for the Western District of Missouri expressed concern that permitting pretrial document production directly to the government without judicial involvement would "create[] the possibility that the government will fail to share all of the material with the defense . . . with no one being the wiser—the very thing that Rule 17(c) was designed to prevent." *United States v. Eye*, No. 05-00344-01-CR-W-ODS, 2008 WL 1776400 (W.D. Mo. Apr. 15, 2008) (admonishing government for using Rule 17(c) subpoena without a court order even though such conduct had been acceptable practice in the court for years).

The inequity occasioned by the government's overreach here is readily apparent. The government had overwhelming investigative resources and the power of the grand jury at its disposal when preparing its case and conducting its four-year investigation. Yet, the government is now fishing for ever more materials pretrial, while Mr. Isaza Tuzman—threatened with imprisonment—has played by the rules in asking for Court permission to build his defense. Troublingly, we have no idea how many more Rule 17(c) subpoenas the government has issued to third parties. We only became aware of *this* particular subpoena because Harvard University was required by the Family Educational Rights and Privacy Act to tell Mr. Isaza Tuzman about the requested disclosure, despite the government's improper request for confidentiality. (*See* Ex. A.) Other subpoena recipients will likely have no obligation to inform Mr. Isaza Tuzman that the government has requested documents pretrial and without proper judicial authorization.

**GIBSON DUNN**

August 14, 2017
Page 4

If the government has obtained *ex parte* judicial approval for this subpoena, we respectfully submit that Mr. Isaza Tuzman should get reciprocal pretrial discovery rights in the interests of justice (and his pending third-party subpoenas approved).  Alternatively, should the Court find that Rule 17(c) pretrial discovery is permitted in this case absent judicial approval, we respectfully submit that all parties be made aware of that ruling so that Mr. Isaza Tuzman may proceed with his defense accordingly.  But if the government has been flouting Rule 17(c) in the shadows—as is apparently the case—courts have held that appropriate remedies include precluding reliance on any materials obtained pretrial, admonishment on the record, and disciplinary sanctions.  *E.g.*, *Vo*, 78 F. Supp. 3d at 176-77 (inviting parties to propose relief for government's violation of Rule 17(c) and suggesting that appropriate remedy could be "the return or destruction of some or all of the materials at issue" that were improperly obtained from third parties before trial).  "The subpoena power is a substantial delegation of authority . . . and those who invoke it have a grave responsibility to ensure it is not abused."  *United States v. Candelario-Santana*, 929 F. Supp. 2d 24, 27 (D.P.R. 2013) (quoting *Theofel v. Farey–Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004)) (imposing severe sanctions on the government, including disqualifying one of the assigned prosecutors, because "despite its inherent advantage under Rule 17 and the clear directive of case law, the government abused its discretionary authority to gain a tactical advantage over the defense, both by improperly calling witnesses and by violating the *Nixon* rule regarding the pretrial production of documents").  At a minimum, the government should be required to come clean about the extent of pretrial third-party discovery it has demanded.

Respectfully submitted,

*/s/ Avi Weitzman*

cc.     All Counsel of Record (via ECF)