**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Avi Weitzman
Direct: +1 212.351.2465
Fax: +1 212.351.5265
AWeitzman@gibsondunn.com

August 22, 2017

VIA ECF & FACSIMILE

The Honorable Paul G. Gardephe
United States District Judge for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007-1312

Re:    *United States v. Kaleil Isaza Tuzman*, S8 15 Cr. 536 (PGG)

Dear Judge Gardephe:

As counsel for Kaleil Isaza Tuzman in the above-referenced action, we write in response to the government's letter of August 18, 2017 (Dkt. 372, the "August 18 letter"), which attempts—but fails—to explain away its abuse of Rule 17(c) to secretly obtain pretrial discovery. Conspicuously devoid of any affirmative authority sanctioning the government's overreach, the August 18 letter instead smacks of indignation that the defense would dare challenge what the government self-servingly describes as "well-established practice in this District." Dkt. 372 at 3. Nothing in the government's August 18 letter justifies its efforts to seek pretrial discovery without judicial review or authorization.

With regard to the specifics of the Harvard subpoena, the government *ipse dixit* proclaims that it was "validly issued," without any explanation for how the subpoena remotely satisfies the governing *Nixon* standard, which the government does not even reference in its letter. That is because the Harvard subpoena cannot satisfy *Nixon*. It was plainly an improper fishing expedition into a defendant's unrelated and irrelevant personal affairs dating back approximately 25 years ago to the early 1990s. Moreover, the government makes much of its claim that the Harvard "subpoena does not ***require*** the return of documents before trial." Dkt. 372 at 1 (emphasis added). But, as pointed out in our August 14 letter, the cover letter accompanying the subpoena explicitly requested production "by August 21, 2017." The government's response ignores the coercive power associated with requests from federal prosecutors for expedition in response to a "Court Subpoena." The government also offers no support for the assertion that "[t]here is nothing unusual or improper about" requesting secrecy from a third party about the existence of a subpoena (Dkt. 372 at 2)—a particularly astonishing claim where the recipient is under a legal obligation to disclose the request under federal privacy laws and the government had no right to object to such disclosure anyway. Moreover, if it is true that the practice of pretrial discovery "has a practical function" in

**GIBSON DUNN**

August 22, 2017
Page 2

conserving resources as the government claims (Dkt. 372 at 1), then Mr. Isaza Tuzman's requested pretrial Rule 17(c) subpoenas should be issued in order to level the playing field.

As for legal authority, the Government distorts *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171 (D.D.C. 2015), beyond all recognition. The document subpoena at issue in *Vo*—by asking the recipient to "'promptly provide[] the undersigned Assistant U.S. Attorney with [the requested documents]'" (Dkt. 372 at 2)—was, in effect, indistinguishable from the letter request here asking Harvard for production within two weeks. That aspect of the subpoena, an apparent and unauthorized demand for pretrial production, is exactly what troubled Judge Sullivan—***not*** whether the subpoena excused appearance at trial only if early production was made, as the Government suggests. *See Vo*, 78 F. Supp. 3d at 174–79. The Government's efforts to downplay the other authority cited in our August 14 letter rings equally hollow, as even a cursory review of those cases would reveal. Notably, *United States v. Finn*, 919 F. Supp. 1305 (D. Minn. 1995), was a resounding rejection of a "'standing order' to issue Rule 17 subpoenas without prior motion to the court," as the government concedes (Dkt. 372 at 2), but that practice is precisely what the government says it should "routinely" be allowed to do in this District for efficiency's sake.

Particularly troubling is the government's apparent cavalier approach to this Court's August 17 order (a) prohibiting the government from reviewing any productions in response to government-issued trial subpoenas with a cover letter requesting pretrial production and (b) requiring judicial review of those government-issued trial subpoenas. That order, in effect, imposes a standstill with respect to discovery until the Court has an opportunity to review the subpoenas and any resulting productions. Surprisingly, the government's August 18 letter barely acknowledged the Court's order of the day prior, relegating it to a single footnote (Dkt. 372 at n.1), despite the government's implicit suggestion that the August 17 order was improvidently granted. And, because the government has not provided defense counsel with a courtesy copy of any cover letter to the Court following issuance of the August 17 order, we do not know whether and when the government complied with the order.

Indeed, we have attempted unsuccessfully to determine whether the government has already violated the Court's August 17 order. That order was issued at 10:44 in the morning. Seven hours later, at 6:02 pm on August 17, the government served on counsel a production of records it obtained from Goldman Sachs pertaining to Mr. Isaza Tuzman's employment there in the 1990s. *See* Ex. A. At 7:23 pm that same evening, we asked the government whether the Goldman Sachs production was made in response to a trial subpoena requesting pretrial production, and if so, the approximate date and time the Government received and reviewed the Goldman Sachs production. *See* Ex. A. Five days later, the government continues to ignore our reasonable inquiry without response, leaving us to assume that the Goldman Sachs production was in response to a subpoena substantially similar to the one the government

**GIBSON DUNN**

August 22, 2017
Page 3

issued to Harvard University.  This leaves a number of important questions unanswered including, but not limited to, why the government produced the Goldman Sachs documents as Rule 16 discovery (presumably as documents the government intends to use at trial under Rule 16(a)(1)(E)(ii)) when the Court directed the government in the August 17 order to maintain the status quo until further review by the Court?

Ultimately, the government focuses on distinctions without a difference to excuse its discovery conduct, but cannot point to a single rule or statute permitting the government to unilaterally issue secret trial subpoenas to obtain pretrial discovery without judicial review or authorization.  By avoiding judicial review prior to seeking pretrial production of documents, the Government's subpoena(s) effectively circumvent the *Nixon* limitations on the issuance of Rule 17(c) subpoenas.  Nor can we simply trust the government to follow *Nixon* without any judicial review, as decades of experience show few third parties have the desire or courage to challenge improper Rule 17(c) subpoenas issued by the government.  It is simply no answer that pretrial subpoena requests are "well-established practice in this District," a refrain that appears no less than three times in the government's August 18 letter.  (Dkt. 372 at 1-3).  Habit does not make a practice appropriate or lawful.[1]

Respectfully submitted,

*/s/ Avi Weitzman*

Cc:     All Counsel of Record (via ECF)

---

[1] In an effort to tar the defense, the government cites to a question asked by Magistrate Judge Cott to suggest that the defense has abused civil discovery process.  *See* Aug. 18 Ltr. at n.3.  Needless to say, questions are not evidence and Magistrate Judge Cott made no such finding.  The government's complaint is particularly baseless given that the government insisted that any litigation surrounding the Parker Poe privilege waiver proceed in the SEC action, not the criminal action.  Dkt. 334 at 2.