**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 8, 2017

BY ECF AND E-MAIL

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    United States v. Omar Amanat
                S8 15 Cr. 536 (PGG)

Dear Judge Gardephe:

      The Government respectfully requests that the Court preclude Omar Amanat from offering an email, dated December 19, 2008, that he sent to his father, Sharif Amanat. (Amanat Exhibit 907). This email is hearsay, the state-of-mind exception does not apply, and its admission would be unduly prejudicial. For the reasons set forth below, the Court should preclude its admission into evidence.

### Background

      In its case-in-chief, the Government introduced a redacted version of a December 19, 2008 email from Omar Amanat to Irfan Amanat. In that email, Omar Amanat claimed that he did not have the ability to repay the $2 million that Maiden Capital had loaned to Enable Invest Ltd. in November 2008:

> He spoke w Maiden where they apparently discussed 'difficulties get money out of Enable.' Maiden has tries to reach me and is asking for his $2mln back. In a post madoff world where everyone is suspicious. This is a major problem and red flag for me. As u know. I don't have any ability to repay it. I only made the loan bc mahmood was promising to repay in a few weeks. Any monies out from mahmood need to first come to pay this down. This is a major disaster – of madoff proportions – if maiden suspects fraud of some sort and notifies the authorities I'm cooked. All in all this is some pickle of a situation this time.

(GX 2965) (emphasis omitted in exhibit).

During cross-examination of Stephen Maiden yesterday afternoon, defense counsel tried to offer Amanat Exhibit 907, an apparent continuation of the December 19, 2008 email chain. In that email, Omar Amanat tells his father, who became aware of the earlier email about potentially fraudulent behavior and confronted Omar Amanat about it, that his earlier statements in GX 2965 to his brother Irfan Amanat were exaggerations:

> And of course I'm embarrassed to admin [sic] I exaggerated about being concerned about this being of Madoff-proportions or worried about being in trouble with authorities. I'm boiling in angers but definitely not cooked!
>
> You know since a kid [sic] my language is always colorful but I was only bluffing him about that to exert pressure on him/make him feel bad but also for another legitimate reason: I am concerned that he wont repay ME the $2mln he receive receives from Mahmood/GTL but instead give it to others.

Yesterday was the first time the Government had seen Amanat Exhibit 907. Omar Amanat did not produce this email in Rule 16 discovery or mark it as a defense exhibit.[1] Moreover, as the Court is aware, the Government searched both Irfan Amanat and Omar Amanat's personal email accounts, pursuant to a judicially authorized search warrant. Irfan Amanat's account contained GX 2965. Omar Amanat's account was largely empty and, tellingly, contain neither GX 2965 nor Amanat Exhibit 907.[2]

### Argument

Amanat's self-serving, after-the-fact, out-of-court statement to his father about a tiff with his brother is hearsay. The defendant has failed to show that it meets any exception to the hearsay rules, and the Court should preclude its admission.

A.    Applicable Law

Rule 801(d)(2)(A) of the Federal Rules of Evidence prohibits a defendant from offering his own out-of-court statements without subjecting himself to cross-examination. "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States* v. *Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *see*

---

[1] Defense counsel had previously agreed to provide its defense exhibits (other than impeachment) seven days prior to trial. This was a reciprocal obligation to the Government's agreement to provide its exhibits 30 days prior to trial.

[2] A June 14, 2008 email from Omar Amanat's Yahoo account to Irfan Amanat requested assistance in "delet[ing] all of my emails from the yahoo site but download them onto my laptop" out of "concern[] about them subp[o]ening yahoo." Prior to trial, the Court granted Omar Amanat's motion *in limine* to preclude the Government from offering this email. (Final Pretrial Conference Tr. at 68-69.)

*also United States* v. *Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) (holding that defendant "could have testified to everything asserted in his statement, [but] he could not offer the document itself for the truth of the matter asserted"); *United States* v. *Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) (same); *United States* v. *Fernandez*, 839 F.2d 639, 640 (9th Cir. 1987) ("defense counsel wished to place [the defendant's] statement before the jury without subjecting [the defendant] to cross-examination, precisely what the hearsay rule forbids.").

Rule 803(3) permits the admission of evidence of a "declarant's then-existing state of mind . . . b*ut not including a statement of memory or belief to prove the fact remembered or believed.*" Importantly, "a determination of whether a statement falls within the state of mind exception, requires a predicate finding as to whether the statement relates to a then existing state of mind or to a past memory or belief offered to prove the fact remembered or believed." *United States* v. *Cardascia,* 951 F.2d 474, 488 (2d Cir.1991). In other words, the Court must determine whether the declarant is offering the statement for his state of mind *at the time of the statement he is offering* or to prove his state of mind at some earlier time, which would be is impermissible. Indeed, the Second Circuit has made clear that, to be properly offered under the state of mind exception, the declaration at issue the "statement must *face forward*, rather than backward." *United States* v. *Harwood*, 998 F.2d 91, 98 (2d Cir. 1993) (emphasis added); *United States* v. *Lawal*, 736 F.2d 5, 8 (2d Cir. 1984) ("statements of what [the defendant] or someone else had done in the past . . . would be properly excludable as inadmissible hearsay not within the terms of Rule 803(3)"); *United States* v. *Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (A declaration of then-existing state of mind must convey statements that 'face forward, rather than backward.'").

Courts applying the state of mind exception "focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation." *Cardascia*, 951 F.2d at 487. The contemporaneity determination focuses not on the precise amount of time that has passed between the statement and event but "[w]hether a statement is part of a continuous mental process" the same analysis used to evaluate whether a statement is a present sense impression or an excited utterance (*Id.* at 488). The contemporaneity component thus focuses not on a requisite amount of time between the statement and event it describes but on whether "such statements are reliable because of their *spontaneity* and [the] resulting probable sincerity." (internal quotation marks and citations omitted). *Horton* v. *Allen,* 370 F.3d 75, 85 (1st Cir.2004)

Courts have applied this standard to conclude that statements regarding events that occurred earlier *the same day* cannot be offered to show the earlier mental state. *United States* v. *Taubman*, 297 F.3d 161, 164-65(2d Cir. 2002) (upholding the exclusion of statements made regarding events earlier the same day as evidence of the earlier state of mind); *United States* v. *Macey,* 8 F.3d 462, 467–68 (7th Cir.1993) (excluding a statement justifying defendant's request for fraudulent invoices in part because "[t]he district court could have reasonably concluded that [the defendant] had time to fabricate a story in the *four hours* between his fraud and his statement to [the employee]"); *see also United States* v. *Rivera-Hernandez*, 497 F.3d 71 (1st Cir. 2007) (upholding a son's statement to his father providing an alternative explanation for an inculpatory request for false invoices because the statement was not made contemporaneously with the invoice demand, such that the district court could "reasonably conclude[] that the statement was untrustworthy, and therefore unreliable, because [the defendant] had enough time to fabricate and misrepresent his [earlier] statement"); *United States* v. *Naiden,* 424 F.3d 718, 721–23 (8th

Cir.2005) (excluding defendant's statement to a friend that he did not believe his online victim was really fourteen because the statement was made *one day* after the defendant met the victim and it was therefore "not made as an immediate reaction to his communication with her, but after he had had ample opportunity to reflect on the situation").

B. Discussion

Here, the defendant seeks to admit Omar Amanat's statement to his father at 9:43 a.m. on December 19, 2008 as evidence of his state of mind several hours earlier when the defendant sent the original email to his brother. The only state of mind for which the later email can be properly introduced under Fed. R. Evid. 803(3) is the defendant's state of mind at the time he sent the latter, explanatory email to his father, which is of no relevance. The explanatory email should not be allowed as evidence of the defendant's state of mind at the time of his initial email to his brother. *Taubman*, a Second Circuit decision involving statements on the same day, makes this clear. In that case, the defendant, under the guise of Fed. R. Evid. 803(3), sought to introduce statements he made to his administrative assistant upon returning from a meeting (in which the alleged crimes were discussed) as evidence of his state of mind at the meeting. The District Court precluded this use of the state-of-mind exception and the Court of Appeals affirmed. Though the statements to the administrative assistant were made on the same day as the critical meeting, the statements conveyed the defendant's beliefs "about a meeting that had already happened," which made them inadmissible hearsay. The Second Circuit affirmed, concluding that such backward looking statements were precisely the type of past belief expressly excluded from admission under Rule 803(3). *Taubman*, 297 F.3d at 164-65.

That is exactly what Amanat improperly seeks to do here. The language of Rule 803(3) precludes Omar Amanat from introducing his statements to his father to demonstrate his belief or state of mind at the time he emailed his brother several hours earlier. As *Taubman* demonstrates, the law is concerned not just with the time period that passes between the statement and the event but with the opportunity for "deliberate or conscious misrepresentation of events." *See Cardascia* at 87. In this case, after receiving an email from his father asking him to explain his earlier statements to his brother, the defendant had hours to consider his response and every incentive to minimize the gravity of the situation to his father, a person unconnected to the wrongdoing at issue in this case and someone who Amanat would not want to upset by virtue of the father-son relationship. The Court should preclude Amanat from offering his considered explanation to his father as evidence of his state-of-mind at the time he emailed his brother earlier that day.

Finally, it would also be unfairly prejudicial to the Government to allow the defendant to admit his email to his father in which he talks about his "exaggeration" without the jury knowing that his email was focused on explaining away his comparison of his own conduct to that of Bernard Madoff. As the Court knows, Amanat moved *in limine* to preclude the Government from making any reference to Madoff at trial, because, as Amanat put it, Madoff was "the most significant Ponzi-schemer of all time, and his impact on numerous individuals and institutions in New York is so expansive that it is still being quantified, almost a decade after Madoff's arrest." The Court found that Amanat's comparison was inaccurate given the scope of the crimes alleged here and the crimes committed by Madoff. If the defendant is allowed to offer evidence that his email to his brother constituted an exaggeration and the Government remains precluded from showing the jury

that the email references Madoff, then the jury will necessarily assume that the defendant's statements to his father about his penchant for exaggeration applied only to the inculpatory statements that he was worried about trouble with the authorities. The defendant should not be allowed to seek preclusion of a reference to Madoff and then use that ruling to distort the facts presented to the jury.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By:    /s/
Damian Williams
Andrea M. Griswold
Joshua A. Naftalis
Assistant United States Attorneys
(212) 637-2298/1205/2310