**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Avi Weitzman
Direct: +1 212.351.2465
Fax: +1 212.351.5265
AWeitzman@gibsondunn.com

November 9, 2017

FILED VIA ECF

The Honorable Paul G. Gardephe
United States District Judge for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007-1312

Re:   *United States v. Kaleil Isaza Tuzman*, S8 15 Cr. 536 (PGG)
      <u>Admissibility of Mr. Isaza Tuzman's Statements In Maiden Text Messages</u>

Dear Judge Gardephe:

We represent Kaleil Isaza Tuzman. On November 8, 2017, during cross-examination of Stephen Maiden, defense counsel attempted to introduce certain text messages between Maiden and Mr. Isaza Tuzman sent in May and June 2012. In those text messages, Mr. Isaza Tuzman made the following statements to Maiden:

- "I will not commit fraud for you," KIT Ex. 3325;

- "I am not committing fraud for you," KIT Ex. 3329; and

- that any settlement agreement of the disputes between Mr. Isaza Tuzman, Mr. Omar Amanat, Maiden and others "must be compliant with SEC Rules and I am not going to do anything wrong," KIT Ex. 3328.

The government objected to the admission of these statements by Mr. Isaza Tuzman. Nov. 8 Tr. 1569:23-1570:9. The objection should be overruled. Mr. Isaza Tuzman's contemporaneous rejection of Maiden's invitations to commit (or cover up) fraud are admissible under Federal Rule of Evidence 803(3) because they reflect Mr. Isaza Tuzman's mental state *when the text messages were sent* in May and June 2012—which is a time period during which the government contends Mr. Isaza Tuzman was still engaged in criminal conspiracies with Maiden. They are also needed to rebut the government's extensive use of allegedly inculpatory 2012 text messages on direct examination. Accordingly, the Court should admit these exhibits into evidence.

**<u>The Text Messages Are Admissible State Of Mind Evidence Under FRE 803(3)</u>**

The Rule 803(3) hearsay exception permits introduction of an out-of-court statement reflecting "the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed."

**GIBSON DUNN**

November 9, 2017
Page 2


Fed. R. Evid. 803(3). This exception thus permits even hearsay statements that reflect the declarant's present or future state of mind at the time—"the statement must face forward, rather than backward." *United States v. Harwood*, 998 F.2d 91, 98 (2d Cir. 1993). The reason for this distinction is based on "the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation." *Id.* (citing *United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991)). The rule permits testimony that the speaker "hate[s] X" right now, but not a statement that that person "hated X last year." *United States v. Cosentino*, 581 F. Supp. 600, 602 (E.D.N.Y. 1984). These statements "are categorically admissible, even if they are self-serving and made under circumstances which undermine their trustworthiness." *United States v. Lawal*, 736 F.2d 5, 8 (2d Cir. 1984).

The Second Circuit has repeatedly interpreted Rule 803(3) to permit introduction of hearsay statements that reflect the defendant's then-existing mental state while (or even immediately after) the charged offense is allegedly committed. In *United States v. DiMaria*, 727 F.2d 265 (2d Cir. 1984), for example, the defendant was charged with purchasing contraband cigarettes and sought to introduce a statement he had made when first approached by FBI agents ***before*** being arrested—that he "only came here to get some cigarettes real cheap." *Id.* at 270. The Second Circuit concluded that the trial court erroneously excluded the defendant's statement and vacated the conviction, explaining that it should have been admitted to show "that his existing state of mind was to possess bootleg cigarettes, not stolen cigarettes." *Id.* at 271. In other words, the defendant's statement was not "what he or someone else had done in the past. It was a statement of what he was thinking in the present," ***contemporaneously with acts constituting the alleged crime***. *Id.*

Likewise, in *United States v. Harris*, 733 F.2d 994 (2d Cir. 1984), the defendant was charged with conspiracy to distribute heroin, and the government's proof focused in large part on recorded conversations between the defendant and an informer who allegedly was also part of the conspiracy. *Id.* at 997. The theory of the defense was that the defendant knew that the informant was cooperating with authorities, but played along out of fear. *Id.* at 1000. To substantiate this defense, the defendant proffered testimony of his parole officer, who would have testified that, during the time period of the conspiracy, the defendant told the parole officer that he had "an encounter with some people who could cause him trouble"; that "the Government and people were after him and trying to set him up"; and that the informant "had brought an agent to him." *Id.* at 1000-01, 1004. The district court excluded these statements, but the Second Circuit reversed and vacated the conviction because those statements showed the defendant's "state of mind—his knowledge of [the informant's] cooperation" and reluctance to go along with the proposed scheme, which could lead the jury to infer that he did not possess the requisite intent to commit the crime. *Id.* at 1004-06.

November 9, 2017
Page 3

Other circuit courts of appeals have similarly held that out-of-court statements demonstrating either the refusal to participate in an illegal scheme or a reason for future action are admissible under Rule 803(3). In *United States v. Partyka*, 561 F.2d 118 (8th Cir. 1977), for instance, the trial court refused to admit an account of a conversation where the defendant stated to an undercover informant "that he was unwilling to engage in the transaction and maintained his position in spite of importunities on the part of [the informant]." *Id.* at 121. The Eighth Circuit held that excluding evidence of the defendant's statements during "the conversation was error" because the statements "were not self-serving declarations about a past attitude or state of mind, but were manifestations of his present state of mind, his immediate reaction to the proposal of [the informant]" to engage in the very illegal conduct charged in the indictment. *Id.* at 125. As such, the statements "were admissible" under Rule 803(3).

And in *United States v. Peak*, 856 F.2d 825 (7th Cir. 1988), the trial court barred introduction of the defendant's statements during a telephone call with an alleged co-conspirator that he thought the proposed scheme to distribute drugs was "crazy," but would help with another, entirely legal, aspect of the plan (to help get someone into police custody). *Id.* at 832. The Seventh Circuit vacated the defendant's conviction on the ground that his out-of-court statements had been improperly excluded. The court reasoned that "[w]hile the government was attempting to show that [the defendant] had the specific intent to conspire in a drug scheme," the defendant's "reply to [his alleged co-conspirator] on the telephone tends to show that his intent was to help 'capture'" a third party—and did not extend to any other conduct. *Id.* at 833. Significantly, the Seventh Circuit rejected the government's contention that "details of a conversation" are not admissible under Rule 803(3) in light of the limited purpose for which the evidence was proffered: To show the defendant's "***lack of intent***" to participate in the charged crime. *Id.* at 833-34 (noting that it was not the defendant's "purpose to gain admission into evidence of other details of the conversation") (emphasis added). *See also Oberman v. Dun & Bradstreet, Inc.*, 507 F.2d 349, 351-52 (7th Cir. 1974) (observing that "[s]ince evidence of the declarant's state of mind can only be indicated by the declarant's conduct or statements, the exception to the hearsay rule provides for their admission" and ruling that precluded evidence should have been admitted) (citing *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285 (1892)).

The statements at issue here are indistinguishable from those held admissible in the aforementioned cases because they reflect Mr. Isaza Tuzman's then-existing mental state as of May and June 2012 with respect to the alleged conspiracies. For example, the June 14, 2012 text exchange between Mr. Isaza Tuzman and Maiden (KIT Ex. 3328) begins with Maiden asking Mr. Isaza Tuzman several times for a "draft" of the settlement agreement involving Maiden Capital's investors. In response, Mr. Isaza Tuzman rebuffs Maiden, saying: "[T]here is nothing I can do to rush things further. ***This must be compliant with***

**GIBSON DUNN**

November 9, 2017
Page 4

***SEC rules and I am not going to do anything wrong***." (emphasis added).  This statement reflects Mr. Isaza Tuzman's June 2012 state of mind in at least two respects.  *First*, it reflects Mr. Isaza Tuzman's insistence that any settlement documents were lawfully drafted, in compliance with SEC regulations.  *Second*, the statement reflects a preoccupation with the legality of the settlement documents that directly negates the inference that, in June 2012, Mr. Isaza Tuzman believed he was furthering any criminal conspiracy through these settlement documents.  These settlement documents are charged as overt acts to certain criminal conspiracies in the indictment, and Mr. Isaza Tuzman's insistence on a legal and SEC-compliant settlement agreement negates any intent on his part.

The other two statements also fall squarely within Rule 803(3).  In the May 29, 2012 text message, Maiden asks Mr. Isaza Tuzman if he could provide cash to fund Maiden's settlement, including by obtaining "a bigger dividend from kit media"—to which Mr. Isaza Tuzman responds that he "will not commit fraud for you [Maiden]." KIT Ex. 3325.  And in the May 30, 2012 text message—again, in response to Maiden's suggestion that Kaleil obtain funds by increasing a "dividend … to all kit media holders"—Mr. Isaza Tuzman responds that he doesn't "'decide' on KIT Media dividend," and that he would "not commit[] fraud for you [Maiden]." KIT Ex. 3329.  Both of these statements reflect the fact that Mr. Isaza Tuzman had no intent in May 2012 to commit fraud in furtherance of any agreement with Maiden.  Any concerns about reliability are resolved by the contemporaneous (and consistent) nature of Mr. Isaza Tuzman's responses to repeated invitations to engage in illegal conduct.

Moreover, the evidence regarding Mr. Isaza Tuzman's mental state in June 2012 is plainly relevant to the government's theory of the case and intended proof at trial.  *First*, this evidence rebuts the government's theory (and elicited evidence) that Mr. Isaza Tuzman, Omar Amanat, and Maiden each participated in the ongoing concealment of fraud at Maiden's funds all the way into July 2012.  *See* Oct. 30 Tr. 122:13-16 ("All three of them lied.  The three of them banded together to commit fraud.  They doubled down and tried to cover up their millions in losses.").  The government has years-long conspiracies in this case that it alleges continued into 2012.  Thus, on direct examination, the government elicited testimony from Maiden that, as part of his fraudulent scheme, he sought to reach settlements to "cover the Enable hole that had occurred in my fund." Nov. 2 Tr. 758:1-2.  ***He further testified that these settlement negotiations continued through 2012***.  Nov. 2 Tr. 943:5, 23-944:8.  In light of the government's theory and proof, Mr. Isaza Tuzman's statements—reflecting an unflinching desire to conclude the settlement discussions in a lawful manner—are unquestionably relevant to whether he was participating in any fraudulent conduct in 2012 or had the specific intent to engage in such illegal activity.  Because the government has not limited its proof or indictment to a date before 2012 (indeed, the Count 6 allegations with respect to accounting fraud extends into mid-2012), it cannot now be heard to claim that

November 9, 2017
Page 5

the charged conspiracy was over when Mr. Isaza Tuzman indicated he had no desire to engage in illegal conduct.[1]

Indeed, these statements and Mr. Isaza Tuzman's mental state in 2012 are critically relevant to undermine the government's broader theory that Maiden and Mr. Isaza Tuzman were involved in criminal conspiracies at the time. The government spent hours of Maiden's direct examination reading aloud numerous text messages between Mr. Isaza Tuzman and Maiden from 2012—and publishing snippets of exchanges regarding the settlement and Enable-related issues (which the government contends concerns the Count Six accounting fraud charges as well)—in an effort to convince the jury that Maiden and Mr. Isaza Tuzman were cooperating to prevent discovery of their supposed criminal wrongdoings. But a complete picture of their text messages reveals a relationship of distrust and antipathy, in which Mr. Isaza Tuzman refuses to cut corners to placate Maiden. These episodes are flatly inconsistent with the conspiracies alleged and are highly relevant to the nature of the relationship between Maiden and Mr. Isaza Tuzman. Just as the government has been provided leeway to admit evidence as general "background" to the conspiracy, *see United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017), the defense must fairly have the opportunity to respond.

Finally, Mr. Isaza Tuzman's insistence that settlement document be prepared appropriately and in conformance with relevant SEC regulations also undermines the idea that he entered into any agreement "willfully"—that is, that he knew "he was doing a wrongful act." *United States v. Cassese*, 428 F.3d 92, 109 (2d Cir. 2005).

**Admission of the Text Messages Does Not Contravene Rule 404(b)**

Contrary to the government's assertions, Rule 404(b) does not preclude Mr. Isaza Tuzman's text messages to Maiden because the texts do not constitute "extrinsic" acts offered to prove propensity.[2] As an initial matter, Rule 404(b) does not, as the government suggests, broadly call for the exclusion of evidence merely because it touches upon a defendant's so-called "good" or, rather, "noncriminal" acts. Rather, "[t]he Second Circuit evaluates 404(b) evidence under an inclusionary approach," *United States v. Levin*, No. 15 CR. 101 (KBF), 2016 WL 8711458, at *5 (S.D.N.Y. Jan. 8, 2016) (citing *United States v.*

---

[1] Thus, this case does not present a situation like that in *United States v. Netschi*, 511 F. App'x 58 (2d Cir. 2013), where "the excluded statements . . . concerned what [the defendant] said or did after the fraudulent transactions had taken place." *Id.* at 61.

[2] Prior to trial, the government moved under Rule 404(b) to exclude all "proof" of Mr. Isaza Tuzman's "noncriminal acts" "on other occasions." (Dkt No. 390 at pp. 2-5.) The Court denied the government's motion because it offered no specificity of the type of evidence sought to be excluded and reserved any decision regarding "good acts" evidence for trial.

November 9, 2017
Page 6


*McCallum*, 584 F.3d 471, 475 (2d Cir. 2009)), **and it permits other acts evidence so long as it is "relevant to an issue at trial other than the defendant's character,"** *Levin*, 2016 WL 8711458, at *5 (citing *United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998)) (emphasis added).

Evidence of innocent conduct is undoubtedly admissible when it bears a sufficient logical connection to the charged offenses and is used for a proper purpose. Under Rule 404(b), courts have held that defendants may introduce evidence of noncriminal conduct to demonstrate a lack of intent, lack of preparation, or lack of knowledge. *See United States v. Hayes*, 219 F. App'x 114, 116 (3d Cir. 2007) ("As is true with bad act evidence, evidence of good acts is also admissible for a proper purpose such as motive, intent, absence of mistake, etc."); *see also United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) ("On numerous occasions federal and state courts have admitted similar acts evidence offered for defensive purposes."). In *Hayes*, for example, a defendant was convicted of conspiring to falsify petroleum tests. *Hayes*, 219 F. App'x at 115. During the trial, the defendant sought to admit, pursuant to Rule 404(b), testimony from witnesses that he had never asked them to falsify tests and that he had never indicated that data falsification was acceptable, but the district court refused to admit the evidence. *Id*. at 115–16. The Third Circuit vacated the conviction, finding the proffered evidence had the proper purpose of rebutting the government's theory of intent. *Id*. at 117 ("The issue here is not Hayes' good character. Rather, it is his conduct. Evidence that he conducted himself in a manner that was consistent with Saybolt's announced policy, and inconsistent with a conspiracy to fabricate test results, was clearly relevant to the charges he had to defend against."). Because the proffered evidence demonstrated conduct inconsistent with the ongoing scheme alleged, it was admissible evidence the defendant was entitled to present to attack the government's theory of conspiracy and intent. *Id*. at 117–18. Similarly, in *Levin*, Judge Forrest precluded the government from introducing various evidence relating to the defendants' extrinsic "bad acts," 2016 WL 8711458 at *11-13, but she permitted the defendants to introduce evidence relating to non-fraudulent conduct that "negate[d] an intent to defraud and rebut[ed] evidence of . . . participation in a conspiracy with certain individuals," *id*.at *13.

Here, the May and June 2012 text messages that Mr. Isaza Tuzman seeks to introduce are relevant and admissible because they both relate to the government's allegations that Mr. Isaza Tuzman conspired with Maiden through at least July 2012 to cover up the frauds alleged in Counts 4, 5, and 6, and they also rebut the government's proof of Mr. Isaza Tuzman's scienter to commit fraud—a necessary element of the government's charges against him. Throughout trial thus far, the government has argued and elicited testimony suggesting that the charges against Mr. Isaza Tuzman are part-and-parcel with the crimes charged in Counts 1, 2, and 3 of the Indictment, that Mr. Isaza Tuzman's alleged knowledge of the Maiden Capital fraud is evidence of his scienter, and that Mr. Isaza Tuzman's

settlement communications with Maiden were made in furtherance of fraud alleged in Counts 4, 5, and 6. (Oct. 30 Tr. at 120:21-127:11; Nov. 2 Tr. at 757:24-758:2, 823:17-824:3; 835:17-21). In view of the proof that the government has advanced, Mr. Isaza Tuzman's settlement communications with Maiden—in which he refuses to engage in fraud and insists that any settlement comply with SEC regulations—refute the inference that he participated in a conspiracy with Maiden and negate evidence of his alleged intent to engage in fraud. It is thus anything but irrelevant. The Court should overrule the government's objection to the admissibility of these statements.

Respectfully submitted,

*/s/ Avi Weitzman*

cc.     All Counsel of Record